# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN K. COSGROVE, | : |
| | : CIVIL ACTION |
| Plaintiff, | : |
| vs. | : |
| | : |
| CITIZENS AUTOMOBILE FINANCE, INC. | : |
| | : No. 09-1095 |
| Defendant. | : |

## MEMORANDUM

**Schiller, J**.                                                                                                          **August 26, 2010**

Plaintiff Brian Cosgrove seeks to represent a class of individuals who lost their automobiles after failing to make required loan payments and allegedly received notice of repossession that was defective under the Uniform Commercial Code ("UCC"). Currently before the Court are (1) Defendant Citizens Automobile Finance's Motion for Judgment on the Pleadings; (2) Cosgrove's Motion for Leave to File a Second Amended Complaint; (3) Defendant's Motion for Leave to Assert a Counterclaim; and (4) Defendant's Motion to Shift the Costs of Discovery. For the reasons stated below, the Court will deny the first three motions with prejudice and deny the final motion without prejudice.[1]

## I.  BACKGROUND

Plaintiff Brian Cosgrove purchased two Mitsubishi automobiles from a Downingtown car dealership in December 2004, arranging for financing through Defendant Citizens Automobile

---

[1] This case was reassigned after the death of the original presiding Judge, the Honorable Thomas M. Golden. This Court has reviewed the briefs and the transcript of the oral argument held before Judge Golden on June 28, 2010.

Finance ("Citizens" or "Defendant"). (Am. Compl. ¶¶ 15, 18.) The financing contracts included the following clause:

> GETTING THE VEHICLE BACK AFTER REPOSSESSION: If the vehicle has been repossessed, you may reinstate this Contract and the vehicle will be returned to you provided you pay all past due installments or agree with us on mutually satisfactory arrangements, plus accrued late charges, and if default at the time of repossession exceeded 15 days, expenses of retaking, repairing, and storage authorized by law.

(Am. Compl. Exs. A, B.)

A little over a year after buying his new cars, Plaintiff became unable to make his monthly payments. (Am. Compl. ¶ 21.) He contacted Citizens to tell it that it "could repossess the two Autos." (*Id.*) Citizens reclaimed the cars on February 25, 2006 and March 29, 2006. (*Id.* ¶ 22.) A day after each car was taken, Citizens sent Plaintiff a document titled "Notice of Repossession, Redemption Rights and Deficiency Balance Obligation Under Pennsylvania State Law," which read in pertinent part: "You may redeem the vehicle by paying the entire amount you owe on the Contract (not just past due payments) plus, to the extent permitted by law, the cost of taking and storing the vehicle, and other expenses that we have incurred." (*Id.* Exs. C, D.)

Plaintiff filed this putative class action on behalf of himself and similarly situated consumers, alleging that Citizens violated Sections 9610 and 9611 of Pennsylvania's version of the UCC because it failed to provide commercially reasonable notification of disposition. (*Id.* ¶¶ 36–38.) Under Pennsylvania law, "[e]very aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable." 13 PA. CONS. STAT. §§ 9610(b). Furthermore, "a secured party that disposes of collateral under section 9610 (relating to disposition of collateral after default) shall send to the persons specified in subsection (c) a reasonable authenticated notification of disposition." 13 PA. CONS. STAT. § 9611(b). Plaintiff's case

is brought under the UCC, but incorporates the standard for notice of reinstatement of rights described in the Motor Vehicle Sales Finance Act ("MVSFA"), which states, *inter alia*, that

> [w]hen repossession of a motor vehicle, which is the subject of an installment sale contract, is effected otherwise than by legal process, the holder shall immediately furnish the buyer with a written 'notice of repossession' . . . . [that] shall set forth the buyer's right as to reinstatement of the contract, if the holder extends the privilege of reinstatement and redemption of the motor vehicle [and] shall contain an itemized statement of the total amount required to redeem the motor vehicle.

69 PA. CONS. STAT. § 601, *et seq*. Plaintiff claims jurisdiction in this Court is proper pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

Plaintiff alleges that Citizens' notice was insufficient because it (1) failed to notify consumers of their rights to reinstate their loan contracts, which according to the contract could be triggered by paying past due installments, and (2) misrepresented that consumers could only get their cars back if they paid the full amount owed on the loan. (*Id.* ¶¶ 38–39.) Plaintiff alleges that the notice sent by Citizens grossly mischaracterized the sum Plaintiff would need to pay to reinstate his loan contract, inflating his obligation more than tenfold. (*Id.* ¶¶ 7, 28.) According to Plaintiff, all of this renders the notice Citizens sent to him and others similarly situated unreasonable for purposes of the UCC.

## II. STANDARD OF REVIEW

Judgment on the pleadings "will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 260 n.25 (3d Cir. 2010). The Court must view all facts in the light most favorable to the non-moving party, and accept as true all allegations in the

non-movant's complaint. *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). The Court may grant a judgment on the pleadings only "if it is beyond doubt that the non-movant can plead no facts that would support his claim for relief." *Constitution Bank v. DiMarco*, 815 F. Supp. 154, 157 (E.D. Pa. 1993).

Motions to amend should be freely granted when justice so requires. FED. R. CIV. P. 15. However, motions to amend can be denied as futile when an amended complaint would fail to state a claim on which relief could be granted. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

### III.  DISCUSSION

#### A.  Defendant's Motion for Judgment on the Pleadings

The crux of Defendant's Motion for Judgment on the Pleadings is that, having voluntarily surrendered his cars, Plaintiff is ineligible to bring his claim. Defendant argues that the MVSFA, which sets forth the requirement that lenders notify consumers of reinstatement rights in some instances, distinguishes between debtors whose cars are repossessed and debtors who surrender their cars. Specifically, Defendant notes that the section of the MVSFA outlining the requirement of notice of reinstatement rights, 69 PA. CONS. STAT. § 623(D), speaks only of "repossession" whereas the previous section of the MVSFA, 69 PA. CONS. STAT. § 622(B) (dealing with rebates of finance charges) speaks of "surrender or repossession." Relying on this difference in wording, Defendant argues that the Pennsylvania Legislature distinguishes between surrender and repossession of a vehicle, requiring notice of reinstatement rights when collateral is repossessed but not when it is surrendered, such as in Cosgrove's case.

The Court is not persuaded that the Legislature in section 623(D) intended to distinguish between debtors who surrender their cars and those who lose their cars to involuntary repossession. Voluntary surrender of vehicles with defaulted loans is to be encouraged, as it reduces potential conflicts between debtors and creditors. *See Ford Motor Credit Co. v. Welch*, 861 A.2d 1126, 1129–30 (Vt. 2004). The Pennsylvania Legislature surely did not mean to punish debtors who choose to cooperate with lenders by depriving them of their right to receive notice of their contractual reinstatement rights, nor insist that debtors fight their lenders tooth and nail in order to receive protection under section 623(D). Many reasonable debtors, when informed by a secured creditor that they are past due on their repayment obligation and that the creditor is planning to seize their car, will not wait for the embarrassment of a "repo man" showing up at their door but will instead return the vehicle. This does not mean that these debtors are ceding all rights to the collateral or that they could not benefit from notice of their contractual right to reinstatement. A person who relinquishes his car in the face of pressure from creditors and a person whose car was seized from him both have the same "forlorn hope that if he is notified, [he] will either acquire enough money to redeem the collateral or send his friends to bid for it." *Indus. Valley Bank & Trust Co. v. Nash*, 502 A.2d 1254, 1263 (Pa. Super. Ct. 1985) (quoting J.J. WHITE AND R.S. SUMMERS, UNIFORM COMMERCIAL CODE, § 26-9 (2d ed. 1980)). Because voluntary surrender is preferred under the law, the Court cannot conclude that the Pennsylvania Legislature intended to deny debtors who surrender their collateral the same rights conferred upon debtors whose property is repossessed.

Addressing an analogous issue, courts have concluded that a creditor is not relieved of the obligation of notice of disposition of collateral simply because a debtor voluntarily surrenders his or her property. *Key Bank of Maine v. Dunbar*, Civ. A. No. 94-2556, 1995 WL 541778, at *6 (E.D.

5

Pa. Sept. 11, 1995) (collecting cases); *Brockbank v. Best Capital Corp.*, 534 S.E.2d 688, 695 (S.C. 2000) ("Abandonment or voluntary surrender of the collateral by the debtor to the creditor does not waive the debtor's right to notice of resale of the collateral, and the statutory notice provision may not be waived or varied except in writing after default."). Although the right to notice of disposition is not identical to the right to notice of reinstatement rights, the principle at work is still the same—a creditor's obligation is not altered by the debtor's decision to surrender collateral in the face of a threat to repossess.

Furthermore, other provisions of the statute suggest that the Pennsylvania Legislature did not intend to exclude from the protections of section 623(D) those who surrender their car to a secured creditor when faced with the threat of seizure. Section 623 of the MVSFA deals with the repossession of both cars and mobile homes. Subsection 623(G) outlines the notice that lenders must give to debtors before repossession of a mobile home. 69 PA. CONS. STAT. § 623(G). Notably, that provision specifically provides that "notice of intention to accelerate, commence legal action or repossess provided in this subsection shall not be required where the installment buyer has abandoned or voluntarily surrendered the property which is the subject of the mobile home installment sale." *Id.* § 623(G)(2). This illustrates that when the Legislature intended to distinguish between debtors who surrender their property voluntarily and others who do not, it made the intended distinction explicit. Moreover, the subsection shows that the Legislature does not consider the distinction between the terms "surrender" and "repossess" self-evident. If the distinction between the two terms were as clear and meaningful as Defendant suggests, the language of subsection 623(G)(2) would be surplusage, as there would be no need to advise a lender intending to "repossess" a mobile home that had been "surrendered" that it did not need to send the debtor

notice.[2] Because the MVSFA does not excuse the provision of notice of reinstatement rights in cases in which debtors voluntarily surrender their vehicles, Defendant's motion for judgment on the pleadings is denied.

**B.      Plaintiff's Motion for Leave to File Second Amended Complaint**

Plaintiff has requested leave to file a Second Amended Complaint primarily to modify the definition of the proposed class he seeks to represent. The operative Complaint defines the proposed class as:

> a. All persons who entered into a Pennsylvania Retail Installment Sales Contract (RISC) for the purchase and financing of a motor vehicle;
> b. who purchased the vehicle primarily for consumer use;
> c. where the RISC was assigned to or the auto loan otherwise financed by Citizens Automobile Finance, Inc. ("Citizens") . . .
> d. in which the RISC or comparable loan agreement stated in part that, "if the vehicle has been repossessed, you may reinstate this Contract and the vehicle will be returned to you provided you pay all past due installments . . ." ("Reinstatement Right"); and who
> e. had their vehicle(s) repossessed by or at the behest of Citizens; and
> f. were sent a Notice of Repossession or comparable post-repossession notice of rights and obligations from Citizens, ("Notice") dated within four (4) years of the date of this Amended Complaint;
> g. in which the Notice stated: "You may redeem the vehicle by paying the entire amount you owe on the contract (not just past due payments)" or substantially similar language, rather than the Reinstatement Right.

(Am. Compl. ¶ 48.) Discovery in this case revealed that although many of the contracts that Citizens used (including both of Cosgrove's contracts) contained the wording quoted in subparagraph (d) of Cosgrove's class definition, a great number instead contained the following language: "If the vehicle has been repossessed, we may, but are not required to allow you to

---

[2] Defendant also cites to bankruptcy cases concerning real estate transactions, as well as the Bankruptcy Code, to support the proposition that Pennsylvania law distinguishes between "repossession" and "surrender." As this case arises under state statutes and concerns automobiles rather than real estate, the Court does not find the cited authorities persuasive.

7

reinstate this Contract . . . provided you pay all the past due installments, accrued late charges, and agree with us on mutually satisfactory arrangements . . . ." (Pl.'s Mot. For Leave to File Second Am. Compl. [Pl.'s Mot. to Amend] at 3.) Plaintiff seeks to amend his Complaint by defining the class in such a way that it would include any individual whose loan agreement included either of the above-quoted reinstatement terms.

The Court is convinced that such an amendment would be futile and therefore will deny the motion for leave to amend the Amended Complaint. Plaintiff contends that the agreements stating that Citizens "may, but [is] not required to allow [debtors] to reinstate this Contract" establishes a right to reinstatement that is discretionary with Citizens. (Pl.'s Mot. to Amend at 3.) Plaintiff contends that Citizens had to alert debtors of their right to request reinstatement of the contract because the MVSFA requires that a notice of repossession "set forth the buyer's right *as to reinstatement* of the contract." 69 PA. CONS. STAT. § 623(D) (emphasis added). Therefore, Plaintiff argues that in order for Defendant's notice of disposition to be reasonable under 13 PA. CONS. STAT. § 9611, it had to mention that the debtor had this right to request reinstatement. (Pl.'s Mot. to Amend at 3.) The Court disagrees. Despite Plaintiff's attempt to depict the "may, but [is] not required to" language as creating a discretionary right, it really provides no rights at all with respect to reinstatement. Ask as they might, debtors with this contractual language had no contractual right to force Citizens to reinstate the contract after their vehicle had been seized. The notice of repossession these debtors received cannot be deficient for failing to tell debtors that they had the option to make a request that could be summarily denied. It told them that they could redeem the vehicles by paying the entire balance due, which does not contradict any term of their contract. These debtors were in no way misled by the repossession notice they received and thus could not

8

state a plausible claim that the notification of disposition they received was not reasonable under 13 PA. CONS. STAT. § 9611. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Therefore, Plaintiff's motion to amend his Amended Complaint is denied.

### C. Defendant's Motion for Leave to Assert Counterclaim

When a car is repossessed and sold at auction, there is often a deficiency between the amount the lender recovers at auction and the amount that a debtor owes on a loan. Anticipating that many of the potential class members in this suit may have had deficiency balances on their loans, Defendant seeks to amend its Answer to assert a counterclaim seeking a deficiency balance from each member of the potential class. Because the Court lacks jurisdiction to hear Citizens' counterclaim, the Court denies Defendant's Motion for Leave.

To begin with, CAFA does not provide this Court with original jurisdiction over Citizens' proposed counterclaim. CAFA, by its very terms, provides federal district courts with jurisdiction over cases brought by a "class of plaintiffs," not cases brought against a class of counterclaim defendants. *See* 28 U.S.C. § 1332(d)(2); *Palm Harbor Homes, Inc. v. Walters*, Civ. A. No. 08-196, 2009 WL 562854, at *2 (M.D. Ala. Mar. 5, 2009) ("[CAFA] applies, by its terms, to class actions brought by plaintiffs on behalf of classes of plaintiffs. It does not extend to class actions brought against classes of defendants.").

Because there is no original jurisdiction for Defendant's counterclaim, the Court must next determine if it can take supplemental jurisdiction over the counterclaim. The Court can only do so if the claim and counterclaim are so related that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a). This determination is often made by analyzing whether a counterclaim is compulsory or permissive under Federal Rule of Civil

9

Procedure 13, with compulsory claims forming part of the same case or controversy as the claims in the action within the Court's jurisdiction, and permissive claims requiring an independent basis of jurisdiction. *See Ambromovage v. United Mine Workers of Am.*, 726 F.2d 972, 988 (3d Cir. 1984). To determine whether a counterclaim is compulsory, a court considers four factors: whether the issues of law and fact in the complaint and the counterclaim are largely the same; whether *res judicata* would bar a subsequent suit on the counterclaim; whether the same evidence is required to prove the claim and the counterclaim; and whether there is a logical relationship between the claim and the counterclaim. *Orloff v. Syndicated Office Sys.*, Civ. A. No. 00-5355, 2003 WL 22100868, at *2 (E.D. Pa. Aug. 20, 2003).

In this case, the issues of law and fact underlying the claims are quite different. Plaintiff's claim arises under state consumer protection statutes, whereas Citizens' counterclaims are a matter of pure contract law. The evidence required to prove Plaintiff's claim is largely limited to the contract between the parties and the notice of repossession. In contrast, for Citizens to prove that it is owed a deficiency balance, relevant facts include each plaintiff's payment history and Citizens' accounting thereof; the steps Citizens took to repossess the car; and the manner in which Citizens repossessed, stored, and sold the car. Although both Plaintiff's claim and the proposed counterclaims stem from various debtors' decisions to take out auto loans from Citizens, the relationship between the claim and the counterclaim is too tenuous to convert what would be a fairly streamlined determination about whether the notice provided was reasonable under 13 PA. CONS. STAT. § 9611 into a mass forum for the adjudication of small claims. *See Orloff*, 2003 WL 22100868, at *3. Furthermore, allowing the assertion of such a counterclaim would take what is an arguably homogenous class and insert idiosyncratic issues, thereby defeating any possibility of

10

meeting the "commonality" requirement of certifying a class under Federal Rule of Civil Procedure 23(b)(3). This would discourage potential class members from joining the class and run counter to Rule 23's objectives of promoting judicial economy, access to judicial relief, and deterrence of unlawful conduct. 2 WILLIAM B. RUBENSTEIN, ALBA CONTE AND HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 4:34 (4th ed. 2002). Therefore, the Court concludes that Defendant's proposed counterclaim is not compulsory and is thus not so related that it forms part of the same case or controversy as Plaintiff's Complaint. Thus, the Court denies Citizens leave to file its proposed counterclaim due to lack of jurisdiction.

### D. Defendant's Motion to Shift the Costs of Discovery

In the course of discovery, Citizens has had to sort through thousands of loan files to determine whose cars were repossessed and what language was in each of these individual's contracts regarding reinstatement rights. Citizens contends that the contract files were not digitized, and therefore discovery has necessitated significant manpower to manually go through and read each file, of which there are thousands. Furthermore, Citizens was concerned that simply handing over the loan files, which contain confidential material about borrowers, might subject Citizens to potential liability under the Gramm-Leach Bliley Financial Modernization Act of 1999, 15 U.S.C. § 6801, *et seq.* Citizens contends that it has expended a large amount of money to redact those files before handing them over to Cosgrove's lawyers. Citizens contends that these costs should be borne by Cosgrove, because "[t]he usual rule is that a plaintiff must initially bear the cost of notice to the class." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974); *see also Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340 (1978)

Cosgrove counters that the costs Citizens seeks to shift do not relate to class identification,

but to Cosgrove's discovery requests. (Pl.'s Br. in Opp'n to Def.'s Mot. to Shift Costs of Discovery at 11.) He relies on the rule that parties are generally responsible for bearing the costs of making their own responses to discovery, unless one party has made requests that are unduly burdensome. *Oppenheimer*, 437 U.S. at 358. Furthermore, he argues that the very act which has generated so much of the expense in discovery—redacting personal information from the loan files—has rendered the production unhelpful to him for purposes of class notification. (June 28, 2010 Tr. at 64.)

This issue is better addressed, if at all, no earlier than at the class certification stage. At that point, the parties will be better prepared to discuss whether the disputed discovery relates to Cosgrove's class notification obligations. Therefore, the Court will deny without prejudice Defendant's motion to shift discovery costs.

## IV. CONCLUSION

The Court denies Defendant's Motion for Judgment on the Pleadings because a debtor's rights under 69 PA. CONS. STAT. § 623(D) are not dependent on whether his car is forcefully seized or returned after threat of repossession. The Court denies Plaintiff's Motion to File a Second Amended Complaint because the individuals Plaintiff wishes to add to his putative class would not be able to state a plausible claim for relief under 13 PA. CONS. STAT. § 9611. The Court denies Defendant's Motion for Leave to Assert a Counterclaim because it lacks jurisdiction over Defendant's proposed counterclaim. Finally, the Court denies Defendant's Motion to Shift the Costs of Discovery without prejudice to raise at a later date. An appropriate Order will be docketed separately.