IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN K. COSGROVE, on behalf of himself and all others similarly situated, | CLASS ACTION |
| Plaintiff, | |
| vs. | CIVIL ACTION NO. 09-CV-1095(BMS) |
| CITIZENS AUTOMOBILE FINANCE, INC., | |
| Defendant. | |

**PLAINTIFF'S MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT**

DATED:  August 4, 2011

LUNDY, FLITTER BELDECOS &
BERGER, P.C.
**CARY L. FLITTER
THEODORE E. LORENZ
ANDREW M. MILZ**
450 N. Narberth Avenue
Narberth, PA  19072
(610) 822-0782

**Attorneys for Plaintiff and the Class**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................. 1

II.   NATURE OF THE LITIGATION.................................................................... 2

III.  PROCEDURAL HISTORY............................................................................. 6

IV.   NATURE OF SETTLEMENT ........................................................................ 9

V.    LEGAL ARGUMENT ................................................................................... 11

    A.    Factors Bearing on Final Approval....................................................... 11

        1.    The Complexity, Expense and Likely Duration of the Litigation ............ 13

        2.    The Reaction of the Class to the Settlement ............................................ 14

        3.    The Stage of the Proceedings and the Amount of Discovery Completed. 15

        4.    The Risks of Establishing Liability.......................................................... 17

        5.    The Risks of Establishing Damages ........................................................ 18

        6.    The Risks of Maintaining the Class Action Through Trial...................... 19

        7.    The Ability of the Defendant to Withstand a Greater Judgment ............. 19

        8.    *Girsh* Factors (8) The Range of Reasonableness of the
            Settlement in Light of the Best Possible Recovery & (9)
            The Range of Reasonableness of the Settlement to a Possible
            Recovery in Light of all the Attendant Risks of Litigation ...................... 20

        9.    Additional Factors.................................................................................. 22

    B.    Class Representative Incentive to Mr. Cosgrove.................................... 22

    C.    *Cy Pres*............................................................................................... 23

VI.   CONCLUSION............................................................................................. 24

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN K. COSGROVE, on behalf of himself and all others similarly situated, | CLASS ACTION |
| Plaintiff, | |
| vs. | CIVIL ACTION NO. 09-CV-1095(BMS) |
| CITIZENS AUTOMOBILE FINANCE, INC., | |
| Defendant. | |

## PLAINTIFF'S MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT

Pursuant to F. R. Civ. P. 23, Plaintiff Brian Cosgrove, by and through his undersigned counsel, hereby seeks final approval of the Class Action Settlement preliminarily approved by this Court by Order docketed June 20, 2011 (Doc. No. 88). Notice has been provided as ordered; no objections, and only one (1) request for exclusion have been received. This settlement – which calls for $2.9 million in cash, the elimination of $7.75 million in deficiency balances, and repair to class members credit reports – is fair, reasonable and serves the best interests of the Class. For these reasons and those set forth in the accompanying Memorandum, Final Approval should be granted.

Date:   August 4, 2011

/s/      Cary L. Flitter
CARY L. FLITTER
THEODORE E. LORENZ
ANDREW M. MILZ

LUNDY, FLITTER, BELDECOS &
BERGER, P.C.
450 N. Narberth Avenue
Narberth, PA  19072
(610) 822-0782

**Attorneys for Plaintiff and the Class**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN K. COSGROVE, on behalf of himself and all others similarly situated,<br><br>         Plaintiff,<br><br>    vs.<br><br>CITIZENS AUTOMOBILE FINANCE, INC.,<br><br>         Defendant. | CLASS ACTION<br><br><br><br>CIVIL ACTION NO. 09-CV-1095(BMS) |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**I.    INTRODUCTION**

Representative Plaintiff Brian Cosgrove ("Cosgrove") hereby submits this memorandum in support of his Motion for Final Approval of Class Action Settlement. The terms and conditions are set forth in the Settlement Agreement executed May 27, 2011 (the "Settlement Agreement"), a copy of which was presented to the Court and preliminarily approved by Order entered June 20, 2011 (Doc. No. 88). The Settlement Agreement is attached hereto as Exhibit 1. The Agreement calls for over $10,650,000.00 in monetary relief – cash plus debt forgiveness – plus valuable equitable type relief in correcting Class Members' consumer credit reports.

On June 27, 2011, in accordance with this Court's preliminary approval Order, the Notice of Proposed Class Action Settlement (the "Notice") was mailed to 1,853 individual Class Members whose names appeared in Defendant's records. (*See* Affidavit of Paul Mulholland of Strategic Claims Services, Class Administrator, in connection with Notice by Mailing, dated August 3, 2011, attached hereto as Exhibit 2). The Notice informed Class Members of the terms and benefits the settlement proposes, and that they had the right to exclude themselves from the Class or object to the settlement by July 30, 2011. (*See* Class Notice, Exhibit A to Mulholland

Aff't, Ex. 2 hereto). The Notice also advised Class Members that Plaintiff would be applying for an award of attorneys' fees in the amount of $1,250,000.00 and costs reimbursement up to $15,000.00, subject to review and approval of the Court. (*See id.*). Plaintiff moves contemporaneously for an award of Class Counsel fees and costs via a separate motion.[1] As of the date of this Motion, only one (1) Class Member has requested to be excluded from the settlement and <u>no</u> objections have been received to either the overall settlement or to the Class Counsel fees and expenses. (*See* Ex. 2, Mulholland Aff't at ¶ 8).

As discussed below, the settlement is eminently fair and reasonable and is in the best interests of the Class. The settlement, as proposed, satisfies all of the criteria that courts routinely apply in this Circuit for the approval of class action settlements.

## II.   <u>NATURE OF THE LITIGATION</u>

### *Violations of the UCC's Notice Provisions Asserted by Plaintiff*

This class action is brought pursuant to Pennsylvania's Uniform Commercial Code ("UCC"), 13 Pa C.S. § 9601, *et seq.*, which provides certain protections for consumers when their vehicles are repossessed. Non-judicial ("self-help") vehicle repossession allows a secured creditor to take back a borrower's vehicle upon default with no oversight from any court or agency. This leaves the consumer vulnerable to abuses in the practice of auto repossession and overreaching by lenders and their repossession agents. Unlike mortgage foreclosure, which requires pre-seizure notice and court approval, a bank's vehicle repossession practices are constrained primarily by the UCC's consumer protection provisions.

---

[1]     For convenience, and because the two Motions are interrelated and to be considered at the August 18, 2011 hearing, Plaintiff has prepared a singular, consolidated appendix of exhibits. (A courtesy copy of both motions and the exhibit appendix shall be delivered to Chambers).

Article 9 of Pennsylvania's UCC mandates that secured parties strictly comply with the requirement to provide consumers with specific, detailed notices after repossession but before sale. This is to allow the borrower to protect his interest in his property. As this Court held in denying CAF's motion for judgment on the pleadings, the notice requirement is animated by the "forlorn hope that if he is notified, [the borrower] will either acquire enough money to redeem the collateral or send his friends to bid for it." *Cosgrove v. Citizens Auto. Finance, Inc.*, 2010 WL 3370760, *3 (E.D. Pa. Aug. 26, 2010) (quoting *Indus. Valley Bank & Trust Co. v. Nash*, 502 A.2d 1254, 1263 (Pa. Super. Ct. 1985) (quoting J.J. WHITE AND R.S. SUMMERS, UNIFORM COMMERCIAL CODE, § 26-9 (2d ed.1980))).

Article 9 requires a lender to send "reasonable authenticated notice of disposition of collateral." 13 Pa. C.S. § 9611. The UCC itself does not define what is "reasonable" notice. In order to inform what is "reasonable", courts have looked to the contracts between parties and to Pennsylvania statutes specifically governing vehicle financing and repossession. *See Nash*, 502 A.2d at 1263. One of those laws is Pennsylvania's Motor Vehicle Sales Finance Act ("MVSFA"), 69 P.S. § 601 et seq. Section 623D of the MVSFA governs repo notice, and therefore controls the more general provisions of the UCC. The two acts are therefore read *in pari materia*. *Nash*, 502 A.2d at 1263 ("on the question of the kind of notice to be given to a debtor by the secured creditor, the MVSFA and the UCC are clearly *in pari materia* since they relate to the identical thing – the sale of a repossessed motor vehicle").[2] *McCall v. Drive Fin.*, 2006 WL 6233425, ¶5 (Phila CCP, Apr. 10, 2009) (MVSFA requirements imported into UCC repossession notice requirement).

---

[2]        Reasonable notice of disposition as contemplated by Section 9-611 was, prior to the year 2000 revisions to the Uniform Commercial Code, enumerated at Section 9-504. Accordingly, *Nash* and many other cases referring to notice of disposition of collateral cite to the old Code designations, but are nonetheless equally applicable to the revised Code.

The MVSFA balances the rights of auto lenders and borrowers by mandating certain disclosures in a repossession notice, including accurate disclosure of any reinstatement right. Under the MVSFA, a creditor must provide:

> written "notice of repossession" delivered in person, or sent by registered certified mail directed to the last known address of the buyer.  <u>Such notice shall set forth the buyer's right as to reinstatement of the contract</u>, if the holder extends the privilege of reinstatement and redemption of the motor vehicle, …

69 P.S. § 623D (emphasis added).

This provision is of particular importance here as Plaintiff and the class all had a contractual reinstatement right in their retail installment sales contracts (or "RISCs") with CAF. Under the heading "Getting The Vehicle Back After Repossession", the uniform RISC entered into by all class members reads:

> If the vehicle has been repossessed, you may <u>reinstate</u> this Contract and the vehicle will be returned to you <u>provided you pay all past due installments or agree</u> with us on mutually satisfactory arrangements, plus accrued late charges …

(Exhibit 3 hereto, Amended Complaint, at ¶ 20).[3]  Under the MVSFA and the UCC, Cosgrove and the Class were entitled to notice of their contractual right of reinstatement, which they did not receive.

### *CAF's Defective Notice of Disposition*

Despite the borrowers having a contractual right to reinstate by paying only past due payments *and* the bank's statutory duty to advise accurately as to reinstatement rights, CAF chose to send to Cosgrove and each class member a UCC notice of disposition of collateral

---

[3]     Plaintiff includes Cosgrove's Amended Complaint as Exhibit 3:  The Amended Complaint itself has as exhibits relevant to this case and this Motion:  Cosgrove's two RISCs (Exs. A and B to Am. Compl.) and Cosgrove's two "Notice(s) of Repossession" sent by CAF after repossessing Cosgrove's cars (Exs. C and D to Am. Compl.).

which misstated that reinstatement right and demanded many times the amount needed to get the car back.  For example, the February 27, 2006 Notice sent to Mr. Cosgrove stated in part:

> You may redeem the vehicle **by paying the entire amount you owe on the Contract (not just past due payments)** plus, to the extent permitted by law, the cost of taking and storing the vehicle, and other expenses that we incurred.

(*See* Ex. 3 at Ex. C thereto, emphasis added).  Each of the approximately 1,875 class members here received this defective notice from CAF, received <u>no</u> notice at all, or a slightly different (yet equally flawed) notice which read:

> "State law may permit you to get it back (redeem) [or (re-instate)[4]] by curing any payment or other default(s) within the time allowed in the cure notice.  If state law does not permit you to cure your default(s) in this manner, **you may redeem the vehicle by paying the entire amount you owe on the contract (not just past due payments)…**".

(*See* Exhibit 4 hereto, referred to herein as "Notice 2," emphasis added).  Since all of CAF's Notices in issue misstate the reinstatement right – or there was no notice at all provided -- they all violate the UCC.

Plaintiff and the class have a claim to uniform statutory damages as a result of defendant's failure to comply with Article 9 of the UCC.  13 Pa. C.S.A. § 9625(c).

The drafters of the UCC "intended to police lenders under Article 9" and provided for statutory damages for that purpose.  *Chisolm*, 194 F.R.D. at 551 (*citing Merchandising Nat'l Bank of Chicago v. Scanlon*, 408 N.E.2d 248, 251 (Ill. App. Div. 3d 1980).[5]

---

[4]      Some "Notice 2" forms used the word "re-instate" instead of "redeem".  This difference in word choice is not material as both misstate the uniform right to reinstate by making only past due payments.

[5]      Reasonable notice of disposition as contemplated by Sections 9611, 9613-14 was, prior to the year 2000 revisions to the Uniform Commercial Code, enumerated at Section 9504.  The current damages provision at Section 9625 was previously codified at 9507.  Accordingly, *Nash*, *Chisolm* and many other cases referring to the notice of disposition of collateral cite to the old Code designations, but are nonetheless equally applicable to the revised Code.

The UCC's statutory penalty "is evidence of the legislature's recognition that the small amount of compensatory damages that may be proven in a consumer goods repossession and sale would be insufficient to ensure creditor compliance with the Code's provisions." *Brockbank v. Best Cap. Corp.*, 534 S.E.2d 688, 695 (S.C. 2000).

Cosgrove's statutory damages, as well as those for the rest of the Class, are easily identifiable on the face of his loan contract. For example, in the case of Mr. Cosgrove, statutory damages on the Mitsubishi Endeavor contract sum to $10,690.00 (a finance charge of $7,244 plus 10% of the principal obligation of $3,446). (*See* Ex. 3 at Ex. A thereto, Cosgrove Endeavor RISC for figures).[6]

## III.   PROCEDURAL HISTORY

On March 24, 2009, Plaintiff filed an Amended Class Action Complaint (Doc. No. 3, Ex. 3 hereto). After an answer was filed, Defendant filed a Motion for Judgment on the Pleadings arguing that because the repossession of Cosgrove's two vehicles were voluntary repossessions, as opposed to involuntary repossessions, the Code did not apply. (*See* Doc. No. 26). Plaintiff filed his opposition arguing that Notice of Disposition is required in both instances. (Doc. No. 30).

While the Motion for Judgment on the Pleadings was briefed and pending before the Court, each party sought leave to amend their pleadings. By Motion dated February 5, 2010, CAF filed a Motion for Leave to Amend its Answer to assert a Counterclaim for a deficiency balance that CAF alleged Cosgrove (and the Class) owed after it sold the repossessed vehicles. (Doc. No. 41). Plaintiff opposed this Motion (Doc. No. 47). At this time, Plaintiff filed a Motion for Leave to File a Second Amended Complaint (Doc. No. 44) to assert a broader class

---

[6]      Mr. Cosgrove actually had two auto loans with CAF. The Mitsubishi Endeavor loan contract is Ex. A to the Amended Complaint, Ex. "3" hereto and the Mitsubishi Galant loan contract is Ex. B to the Amended Complaint, Ex. "3" hereto.

definition, and Defendant opposed (Doc. No. 50). With these Motions pending before the Court, Judge Thomas M. Golden called for oral argument and a hearing on the Motions took place on June 28, 2010.

Upon Judge Golden's passing, the case (and the pending Motions) were assigned to this Court's docket. On August 26, 2010 the Court issued an Order and Opinion denying CAF's Motion for Judgment on the Pleadings, denying Plaintiff's Motion for Leave to File a Second Amended Complaint, and Defendant's Motion for Leave to Amend to assert a (class) Counterclaim (Doc. No. 74). *Cosgrove v. Citizens Automobile Finance*, 2010 WL 3370760 (E.D. Pa. Aug. 26, 2010).

Throughout the course of much of this litigation, Plaintiff's requested written discovery was regularly challenged by CAF. Plaintiff was constrained to file two Motions to Compel (which were ultimately withdrawn after CAF's later production). For its part, CAF filed a Motion to Shift the Costs of Discovery and a Motion to Quash the depositions of third party witnesses. Plaintiff opposed this Motion, which was denied (*see* Doc. No. 69) on May 7, 2010.

CAF ultimately produced tens of thousands of pages of documents, heavily redacted, spanning the loan files of over 3000 Pennsylvania consumers. Review and summary of these records for litigation of the case took many hundreds of man-hours by Class Counsel. Plaintiff was able to ascertain that there was indeed numerosity as required by Rule 23 to pursue class certification. On November 17, 2010, Plaintiff filed his Motion for Class Certification (Doc. No. 77). On December 13, 2010, Defendant CAF filed its opposition thereto (Doc. No. 81) challenging the commonality of issues among the asserted class, that certain class members should not be included in the class definition due to various reasons (i.e. bankruptcy, reinstatement of their RISC, etc.), challenging predominance based on perceived individualized

issues related to nature of class members' defaults, and that Mr. Cosgrove does not have standing to represent the Class.  Cosgrove filed a reply brief (Doc. No. 82).  The Court scheduled a hearing on Plaintiff's Motion for Class Certification for March 10, 2011 (Doc. No. 83).

At this time, both parties began preparations for filing summary judgment motions.  In the lead up to the March 10, 2011 certification hearing, the parties renewed settlement negotiations and stepped up that process.  Days before the March 10 hearing, counsel reached a settlement in principle.  This was reported to chambers and the March 10 hearing date was converted to a status conference where the parameters of the settlement were discussed.  The Court set and extended a date for preliminary approval.  With the many iterations and revisions, a final form of class settlement agreement was not concluded until early May and ultimately signed by the parties effective May 27, 2011.

Plaintiff filed his unopposed Motion for Preliminary Approval of Class Action Settlement on June 3, 2011.  By Order docketed June 20, 2011, the Court granted preliminary approval, including approval of Notice to the Class. (Doc. No. 88).

On June 27, 2011, Notice in the form approved by the Court was mailed to 1,853 individuals whose names appeared in CAF's records as being members of the Class.  (*See* Mulholland Aff't, Ex. 2).  As of the date of this Motion, there have been no objections and only one request for exclusion.[7]  (*See id.* at ¶¶7-8).  A final approval hearing is scheduled for August 18, 2011 at 1:30 P.M. before this Court.

---

[7]       The exclusion was submitted by Helen M. Mokshefski, whose name will appear on the proposed final order, specifically excluding her.

## IV.    NATURE OF SETTLEMENT

### *The Settlement Terms*

This settlement, if finally approved, will provide over $10.65 million in aggregate monetary relief to the Class plus valuable equitable relief in the form of credit report correction. The significant terms of the class-wide settlement are as follows:

1.    CAF has paid $2,900,000.00 into a settlement fund after Preliminary Approval. Those funds will be used to pay class members, class counsel fees and costs, and administration expenses. (*See* Sett. Agreement, Ex. 1 at ¶ 2.06).

2.    CAF will release all class members with a post-repossession sale deficiency balance claimed due by CAF. These aggregate deficiency balances to be released in this settlement approximate $7,750,000.00. (Sett. Agreement at ¶ 5.02; *see also* Sett. Agreement at p. 3 (valuing deficiencies)).

3.    CAF will satisfy any outstanding monetary judgments it presently holds against class members related to claimed deficiency balances due. Pursuant to the settlement, CAF will use its reasonable best efforts to see to it that any judgments previously entered against class members have been satisfied or released. (Sett. Agreement at ¶ 2.10).

4.    CAF will advise all consumer reporting agencies to whom it reports to either delete entirely any tradeline from the class members' credit reports or to report the account balances of class members as settled with a zero balance owing on their credit reports. (Sett. Agreement at ¶ 2.09).

5.    CAF will cease all collection activity on any deficiency balance allegedly owed by class members. (Sett. Agreement at ¶ 2.09(a)).

6.    CAF will, subject to Court approval, and separate and apart from this settlement fund, pay an individual settlement/incentive award to the class representative Mr. Cosgrove in the amount of $7,500.00 in recognition of his exceptional investment of time on behalf of this class of Pennsylvania borrowers. (Sett. Agreement at ¶ 2.12).

The essential terms of the settlement are set out in the Settlement Agreement attached hereto as Ex. 1.

The parties represent that the proposed settlement was reached through extensive arms-length negotiations, that the substantive terms of the Settlement Agreement were negotiated vigorously and through zealous advocacy, and that Class Counsel is experienced and well-

qualified to evaluate the proposed Settlement Agreement on behalf of the Class Members.  Class Counsel recommends the settlement.  (*See* Flitter Certification, ¶ 28, Exhibit 6 hereto).

### *Aggregate Relief to the Class*

In some ways, this settlement represents a better result than could have been achieved through completely successful litigation, when considering the magnitude of the debt cancellation and the equitable type relief obtained in correcting negative credit reporting.

As noted, the settlement includes the $2.9 million in cash, $7.75 million in debt cancellation (equals $10.65 million) and the harder to quantify – but extremely valuable – benefit of credit repair.  While this last element is more valuable to some than to others, every Class Member will benefit from having CAF correct the reported credit tradelines that appear on his/her consumer reports.  Where a settlement agreement provides both monetary and equitable relief to the Class (such as credit report correction), "a fair assessment of the total relief must also include the value of the equitable relief."  *Ciccarone v. B.J. Marchese, Inc.*, 2004 WL 2966932, *9 (E.D. Pa. Dec. 22, 2004) (consumer class action; credit report correction provided as part of class relief).

Plaintiff has engaged David Stivers, an expert in auto finance and credit worthiness issues.  As stated in the Stivers' expert report, Exhibit 5 hereto, the credit relief contemplated by this settlement should improve the credit rating of <u>all</u> the Class Members and allow them potentially to enjoy more favorable borrowing options and interest rates in future credit opportunities.  (*Id*. at p. 4, ¶1).  A "charge off" notation related to a repossession and claimed deficiency is a significant negative factor in a consumer's credit.  (*See id*. at p. 4, ¶¶3-4).  This notation will be removed per the Settlement Agreement.  (Ex. 1, at ¶ 2.09).

Mr. Stivers opines that the credit repair contemplated by this settlement will positively impact Class Members' attempts to attain a loan or mortgage, add to their ability to apply for insurance at favorable rates, reduce occurrences of "adverse actions" based on negative credit, and generally increase their credit scores. (*See* Ex. 5, Stivers Report at p. 4, ¶¶5-6)  According to Stivers: "updating one's credit account status from "charge off" to "settled, zero balance" will improve one's credit score in a range of from twenty five up to sixty points." (*Id.* at p. 11). "[T]his proposed status change will reduce consumer credit costs of necessities and other expenses that people will normally incur.  <u>All class members will benefit</u>." (*Id.* at p. 12, emphasis added).

According to the Stivers Report, the credit relief contemplated by this Settlement Agreement can yield hundreds of dollars in interest savings in a consumer finance transaction such as a future auto loan.  (*See id.* at p. 12).  Or, in the case of a mortgage loan – tens of thousands of dollars of value in reduced borrowing costs of Class Members over the life of the loan. (*See id.* at p. 13-14).  This naturally equates to millions in additional relief attained by this settlement.  This relief will benefit Class Members well into the future, as negative account data typically remains on a credit report for a period of seven years. *See* 15 U.S.C. § 1681c(a).

In light of all these circumstances, the comprehensive relief afforded by the credit correction portion of the settlement is substantial in its own right and pushes the total benefit to the Class well over the $10.65 million figure.

## V.   <u>LEGAL ARGUMENT</u>

### A.   <u>Factors Bearing on Final Approval</u>

Preliminary approval, granted by order docketed June 20, 2011, was the first of three steps that comprise the approval procedure for settlement of a class action.  At that time, the

Court found preliminarily that all the elements of Fed. R. Civ. Pro. 23 had been satisfied and

certified the Class for purposes of settlement. (*See* Order, Doc. No. 88). The second step was

the dissemination of notice of the settlement to all Class Members, which was carried out as the

Court directed. (Ex. 2, Aff. of Administrator and Ex. A thereto, Notice). The third step is the

final approval hearing, scheduled for August 18, 2011, at 1:30 p.m. *See* MANUAL FOR COMPLEX

LITIGATION, FOURTH, § 21.63 (2004); *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472

(E.D. Pa. 2007).

    The question presented on a motion for final approval of a proposed Class Action

Settlement is whether the proposed settlement is fair in light of the following factors:

> (1) the complexity, expense and likely duration of the litigation ...; (2) the
> reaction of the Class to the settlement ...; (3) the stage of the proceedings and the
> amount of discovery completed ...; (4) the risks of establishing liability ...; (5)
> the risks of establishing damages ...; (6) the risks of maintaining the Class action
> through trial ...; (7) the ability of the defendants to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible
> recovery ...; (9) the range of reasonableness of the settlement fund to a possible
> recovery in light of all the attendant risks of litigation...

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D.

105, 114 (E.D. Pa. 2005) (Schiller, J.). After *Girsh*, the Third Circuit has suggested additional

factors to consider: (a) the pleadings, settlement negotiations, and the Class certification motion

have developed the underlying substantive issues such that all parties may assess the merits of

the claims and defenses; (b) members of the Class have had a sufficient opportunity to opt out of

the settlement; (c) the award to the Representative Plaintiff is fair, adequate and reasonable; and

(d) the procedures for processing the individual claims under the settlement are fair and

reasonable. *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 323 (3d Cir.

1998). *See also In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010) ("The

factors [ ] identified in *Prudential* are illustrative of additional inquiries that in many instances

will be useful for a thoroughgoing analysis of a settlement's terms.").   An evaluation of the relevant factors demonstrates that the settlement here fits well within the range of reasonableness.

       1.       <u>The Complexity, Expense and Likely Duration of the Litigation</u>

This first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *Warfarin Sodium Antitr. Litig.,* 391 F.3d 516, 535-36 (3d Cir. 2004).  This case was filed in March 2009 and covers a class period reaching back to 2005.  Absent this settlement, expensive litigation would continue.  CAF maintains *inter alia*, it has not violated the UCC, and there are not common, typical and predominant issues as to the class such as to prevent class certification under Rule 23.  It is obvious that if this case were to continue, there would need to be contested motion practice and argument over Defendant's challenges on the merits and to the appropriateness of class certification.  Dispositive motions would be filed as to liability and available damages recoverable under the UCC, and costly pre-trial briefing and trial preparation on both sides would be necessary.  Some of the issues of class relief in Article 9 cases such as this are first-impression issues, and a costly appeal is foreseeable by one or both of the parties. In the meantime, the Class Members would be forced to wait out this litigation – and continue to suffer the impact of their deficiency balances and the adverse credit reporting *pendent lite*.  More important, it is unlikely here that more litigation would result in greater value to the Class.

Avoidance of this unnecessary expenditure of time and resources benefits all parties and is to be encouraged.  *See In re Gen. Motors Pick-Up Trust Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and ardent opposition from the defendant were facts favoring settlement, which offers immediate benefits and avoids delay and

expense).  As a result of the settlement, all issues in this litigation will be resolved once and for all, for the entire class.

2.     The Reaction of the Class to the Settlement

The reaction of the Class has been excellent.  As set forth above, 1,853 notices were mailed to members of the Class advising them of the terms of the settlement and their right to object or exclude themselves from the Class.  (*See* Mulholland Aff't, Ex. 2).  The deadline for Class Members to exclude or to object was July 30, 2011.  (*See id.*).  According to Settlement Administrator Strategic Claims, as of August 3, 2011, only one (1) Class Member has exercised the right to exclude herself from the case, Helen M. Mokshefski.  (*See id.* at Ex. B thereto, exclusion request).  Significantly, <u>no</u> Class Member has filed nor served counsel with an objection to any aspect of the proposed settlement.  (*Id.* at ¶8).

The fact that there was only 1 request for exclusion and 0 objections out of over 1,853 mailed notices is convincing evidence of the proposed settlement's fairness and adequacy.  *See Serrano v. Sterling Testing Sys.*, 711 F. Supp. 2d 402, 418 (E.D. Pa. 2010) ("no Class Member has objected to the settlement or to the requested fee, which evidences both a satisfactory result and a reasonable fee"); *In re Rite Aid Sec. Litig.*, 269 F. Supp. 2d 603, 608 (E.D. Pa. 2003) (the absence of any objection and *de minimis* requests for exclusion tips "heavily in favor of a strong presumption of fairness"); *see also Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (noting the second *Girsh* factor "strongly favor[ed]" settlement where only 29 of 281 Class Members objected).  The nearly unanimous, positive reaction of the Class here weighs heavily in favor of the proposed settlement.

14

3.       The Stage of the Proceedings and the Amount of Discovery Completed

For a settlement to be approved, the parties must have an "adequate appreciation" of the merits of the case.  *In re Prudential*, 148 F.3d at 319.  The settlement here comes only after Plaintiff obtained sufficient discovery to evaluate important aspects of this case, including:  the prospects of the case for Class certification, the likelihood of contentious motion practice related to liability and Class certification, the potential for a trial on the merits and subsequent appeal (all with attendant briefing), the likelihood of additional discovery and motion practice, and the projected time and cost associated with lengthier settlement negotiations to resolve the matter.

Plaintiff proffered two sets of interrogatories, four sets of request for documents, and one set of requests for admissions mainly targeted at seeking the loan files of potential class members.  CAF opposed discovery to the point of obstruction, requiring Plaintiff to file two motions to compel.  Ultimately, CAF produced the files of over 3000 consumers, but in heavily redacted form.  Not all of these consumers met the parameters of the Class definition; some had received a different Notice, others had a different contract in their file which did not provide a reinstatement right.  Class Counsel's firm spent well over 400 man-hours in the painstaking review and cataloging of each borrower's file – analyzing, *inter alia*, the retail installment sales contract, notice of disposition, deficiency calculation, and other important documents.  (*See* Ex. 6, Flitter Certification, ¶ 24(c)).  After all this was done – CAF only then provided the unredacted files and yet another round of painstaking analysis needed to be conducted to provide names and addresses for those "class files," that had only been identified in their redacted form. (*Id.* at ¶¶ 18-19, 24(c); Exhibit 8, Certification of Andrew Milz at ¶ 16).  All of this was required to evaluate whether CAF's notice to that consumer violated the consumer's RISC and the UCC, and if so, the statutory damages to which they were entitled.  From this discovery, Plaintiff was

able to identify the common claim of improper notice and able to identify the total statutory damages at play in the case.

Additionally, there were seven depositions of CAF representatives taken in this matter. Plaintiff deposed CAF employees:   Brian St. Louis (manager of litigation and liquidation department), Cheryl Lemos (senior recovery manager), David Senecal (business unit risk manager), John Tonelli (repossession specialist) taken in Providence, Rhode Island, Lisa Testa (loss mitigation specialist) taken in Providence, Rhode Island, Raymond Peloso (senior vice president and head of problem debt management organization), and Stephen Ritarossi (collections manager in the repossession department). (*See* Flitter Cert. at ¶ 23(e); Lorenz Cert., Ex. 7 at ¶ 19).  From these depositions, Plaintiff learned about the types of retail installment sales contracts used by CAF during the class period and whether each form notice offered the consumer the right to reinstate, the types of notices of disposition utilized by the Bank and the amount of notices which erroneously foreclosed a borrower's reinstatement right, the origins of these notices, the size of the class and the overall nature of the class wide violations of the UCC.

By the time of Settlement, litigation had reached a fever pitch in this case.  The Court was poised to rule on Plaintiff's Motion for Class Certification, which CAF had opposed.  Also at this time, both parties were preparing to move for summary judgment on liability.  What is certain is that continued litigation here would have resulted in contentious certification and merits motion practice, rather than the safe and secure deposit of funds into a local bank – which is what has happened here as a result of the settlement.  (*See* bank deposit statement, Ex. 10 hereto).

The parties approached settlement after two full years of litigation, discovery and motion practice with a full appreciation of what discovery revealed and what further litigation would

entail.  As a result of the parties' efforts, the litigation had reached the critical stage where "the parties certainly [had] a clear view of the strengths and weaknesses of their cases." *Reibstein v. Rite Aid Corp.*, 761 F. Supp.2d 241, 252 (E.D. Pa. 2011); *Bonett v. Educ. Debt Servs., Inc.*, 2003 WL 21658267 *6 (E.D. Pa. May 9, 2003).  This factor favors settlement.

## 4.    The Risks of Establishing Liability

This factor surveys the possible risks of litigation in order to balance the likelihood of success and potential damages against benefit of settlement.  *In re Prudential*, 148 F.3d at 319. Plaintiff maintains that liability in this case is strong, *i.e.*, that Defendant sent out critical notices of disposition of collateral which misrepresented borrowers' contractual reinstatement rights.

The law is squarely behind Plaintiff in his claims that the MVSFA and its requirement of informing borrowers of their reinstatement right informs the Court's inquiry as to whether Defendant provided "reasonable authenticated notice of disposition of collateral" as required by UCC section 9610, 9611; *Nash*, 502 A.2d at 1263.  Accordingly, Plaintiff's UCC claim is well founded and should succeed on the merits.  However, this has not stopped CAF from arguing that the MVSFA does not provide a private right of action, that voluntary repossession (which was the case with Mr. Cosgrove) obviates the need for repossession notice under the Code, that the MVSFA's requirements as imported in the UCC may be preempted by federal banking laws, and the like.  Further, while Plaintiff is aware of cases premised on defective repo notice under the MVSFA and UCC, to Plaintiff's knowledge there has been no case quite like this one where the failure involved misleading the consumer about his right to reinstatement and Plaintiff is unaware of any previous contested class certification in this District involving defective repossession notices.  In some ways, this case was an issue of first impression, and thus no outcome is a 100% certainty.

While Plaintiff is confident of his positions on these issues, as with any civil case in this courthouse there is no guarantee that Plaintiff would ultimately succeed on liability. This consideration weighs neutral.

### 5.    The Risks of Establishing Damages

Plaintiff's legal theory invoked the mandatory statutory damages provision of the UCC, 13 Pa. C.S. § 9625(c), which states that in the event of a violation of Article 9 (here the requirement of reasonable notice of disposition), the consumer is entitled to "not less than the credit service charge plus 10% of the principal amount of the obligation or the time price differential plus 10% of the cash price." *Id.* This statutory damage scheme is easy to apply, and its application would have been readily extended across the entire class to prove class statutory damages at trial.

While damages may be uniform and easily applied across the class, CAF believed it had a legal right to set-off the deficiency balances it alleged the Class Members owed after the sale of their vehicles. CAF even filed a Motion for Leave to assert a class-wide counterclaim for these deficiency balances. (Doc. No. 41). Plaintiff opposed this amendment (Doc. No. 47), and the Court disallowed CAF from asserting its class counterclaims in its August 26, 2010 opinion. *See Cosgrove*, 2010 WL 3370760 at *5. But the counterclaim issue remained open. The Settlement Agreement obviates this issue entirely by securing complete deficiency forgiveness and a substantial portion of potential cash. Plus, CAF has already agreed to cease collection efforts on these accounts. (Ex. 1, Sett. Agreement at ¶ 2.09(a)).

Finally, as discussed above, the damages to consumers in the form of negative credit would have been hard to prove on a class basis, and perhaps unavailable under the theory pled. Moreover, the credit relief obtained by this Settlement may not have even been available at trial.

It is unlikely that Plaintiff could have secured through a verdict or court award the type of comprehensive, valuable and immediate relief secured through this settlement.   This factor favors settlement.

### 6.   The Risks of Maintaining the Class Action Through Trial

This Court certified a Class for purposes of preliminary approval (Doc. No. 88), but there was not a certification on contest.   The Supreme Court has recognized the utility of Class actions in certain cases alleging consumer or securities fraud or violations of antitrust laws.   *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997).   This consumer protection case fits that mold, and Plaintiff refers the Court to his discussion of the elements of Rule 23 discussed in his Motion for Preliminary Approval (Doc. No. 86).   In sum, Plaintiff believes each of the elements for class certification were readily met here and the class would have been certified on contest, and should have survived any challenge.

During this litigation, CAF challenged the certifiability of this class and raised the possibility that some Class Members should be excluded for reasons such as bankruptcy, the redemption of their vehicles, release, death and other reasons.   Settlement eliminates the need to litigate these potential individualized issues which might have posed a threat to certification. CAF also challenged certification on commonality, typicality and predominance grounds.   While Plaintiff feels he has the better of these arguments, as this case is the paradigm consumer case based on failure of a uniform notice sent by the bank, this *Girsh* factor favors approval of the settlement.

### 7.   The Ability of the Defendant to Withstand a Greater Judgment

This settlement calls for Defendant to pay a total of $2.9 million in cash (already on deposit), to erase over $7.75 million in claimed deficiencies, and to correct negative credit

reporting on the Class Members.  CAF is an arm of a large multi-national bank and it appears Citizens could have withstood a greater damage amount sustained at trial.  However, due to the elimination of the deficiencies and the credit repair, even a "greater" damages award may not have rendered a net greater benefit to the consumers in this Class.  This factor weighs neutral.

    8.    *Girsh* Factors (8) The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery & (9) The Range of Reasonableness of the Settlement to a Possible Recovery in Light of all the Attendant Risks of Litigation

An assessment of the reasonableness of a proposed settlement requires analysis of the present value of the damages a plaintiff would likely recover if successful, appropriately discounted for the risk of not prevailing.  *In re Prudential*, 148 F.3d at 322.  "Settlement represents a compromise in which the highest hopes of recovery are yielded in exchange for certainty and resolution and courts should guard against demanding too large a settlement based on the court's view of the merits of the litigation."  *In re Safety Components Int'l, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 92 (D.N.J. 2002) (internal citation omitted).

The *best possible recovery* on Plaintiff's claim that Defendant's repossession notices violated Pennsylvania law would be that Defendant would be required to pay statutory damages of approximately $11,442,275 (the total aggregate statutory damages of the 1,853 Class Members,[8] without considering exclusion of any Class Members for assorted reasons). Compared to this, the value of this settlement comes very close to this "home run" amount, when factoring the cancelled deficiency balances, even before taking the valuable credit repair into the equation.  The settlement provides $10,650,000 in monetary relief by a common fund in the

---

[8]    Based on the redacted files CAF produced, Plaintiff calculated statutory damages for a class of 2036 individuals, which summed to $12,573,599.33.  After factoring out duplicates and commercial accounts, a process the parties did not complete until after the Motion for Preliminary Approval was filed (listing a class of 1877), the final class list contained the names and addresses of 1853 consumers.  Taking the average statutory damage per class member of $6,175 ($12,573,599 divided by 2036) times 1,853 class members equals $11,442,275.

substantial amount of $2,900,000 in cash and $7.75 million in debt forgiveness.   Plaintiff

recognizes that debt cancellation or waiver is extremely valuable to some, less to others.

However, a pure UCC remedy would not have necessarily eliminated any Class Member's

"deficiency."

Significantly, the settlement also calls for the removal of CAF's negative entries on the

Class Members' credit reports.   While this relief is not as easily quantifiable as the cash

settlement fund or the debt cancellation, it provides a tangible and valuable award to each Class

Member as set forth in the Stivers Report, attached as Ex. 5 hereto.   The credit relief

contemplated by this settlement will improve the credit rating of all the Class Members and

allow them to likely enjoy more favorable borrowing options and interest rates in future credit

opportunities.   (Id. at p. 4).

The cash awards and debt cancellation, coupled with valuable credit reparations and

satisfaction of outstanding judgments against Class Members constitutes relief valued at well

over $10.65 million and makes this settlement on par with, or better than, the very best-case trial

scenario of $11.442 million.   Of course, a final litigated resolution could be years away with

uncertainty throughout trial and appeal.   Here, there is real value in immediate cash relief,

corrections to the consumer credit reports and satisfaction of judgments already obtained.   See In

re Greenwich Pharmaceutical Sec. Litig., 1995 WL 251293 (E.D. Pa. April 26, 1995):

> "[P]laintiffs' most optimal estimate must be tempered by Defendants' repeated
> and vigorous claim of no damages.   When the probability of success at trial is
> factored into the equation, the settlement is obviously "within the range of
> reasonableness."

Class Counsel endorses this settlement because it is very favorable for the Class in light

of the violation and the immediate equitable-type relief the Settlement Agreement provides.   The

opinion of experienced Class Counsel that settlement is in the best interest of the Class is entitled

to "significant weight." *Lake v. First Nationwide Bank,* 900 F. Supp. 726, 732 (E.D. Pa. 1995). These factors bring the proposed settlement well within the range of reasonableness, and indeed point to an excellent settlement – one that should be approved.

        9.    <u>Additional Factors</u>

    In considering the relevant factors discussed in *In re Prudential*, 148 F.3d at 323, and this record (see the foregoing discussion), the Court should find that (a) the pleadings, settlement negotiations, and the examination of factors related to potential Class certification have developed the underlying substantive issues such that all parties appreciate the merits of the claims; (b) members of the Class have had a sufficient opportunity to opt out of the settlement; (c) the award to the Representative Plaintiff, discussed below, is fair, adequate and reasonable; and (d) the easy procedures for processing the Class Member claims under the settlement are fair and reasonable. This settlement payment requires no claim form. The settlement checks for a pro rata portion of the settlement fund (estimated here to be about $870.00 each) will be mailed to the Class Members. And, there is no reverter of any undistributable funds to CAF. (Ex. 1, Settlement Agreement at ¶ 2.06). Again, the absence of <u>any</u> objection, and only one exclusion, speaks persuasively for this settlement.

    In conclusion, all of the factors discussed above weigh in favor of, or weigh neutral towards approval of the settlement of this Class Action.

**B.**    **<u>Class Representative Incentive to Mr. Cosgrove</u>**

    The Settlement Agreement calls for Mr. Cosgrove to receive his *pro rata* share of the settlement fund: $870 for each of the two vehicles CAF repossessed from him with defective notice, and also calls for him to be paid an incentive amount of $7,500.00 for acting as Representative Plaintiff. (Ex. 1, Sett. Agreement at ¶2.12). Mr. Cosgrove personally met with

counsel several times, engaged in many phone conversations about the status of the case, kept abreast of discovery, reviewed and critiqued several versions of the Settlement Agreement, and generally went out of his way to serve the best interest of the Class at his own expense of time and energy. The award to Mr. Cosgrove is appropriate and comports with similar awards in representative actions enforcing consumer rights in this District. *See e.g. In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, 2009 WL 2137224, *12 (E.D. Pa. June 16, 2009) (Schiller, J.) ($20,000 incentive award approved); *see also Chakejian v. Equifax Information Services, LLC,* --- F.R.D. ----, 2011 WL 2411109, *17 (E.D. Pa. June 15, 2011) ($15,000 individual award approved with court acknowledging "Incentive awards also 'reward the public service' of contributing to the enforcement of mandatory laws.").

### C.    *Cy Pres*

Courts have long recognized the utility of *cy pres* remedies, particularly for undistributable funds and in consumer protection cases such as this where individual claims of the Class Members are relatively small. *See e.g., Perry,* 229 F.R.D. at 117. In the event there are any uncashed checks distributed pursuant to the terms of the Settlement Agreement, those funds shall be donated as a *cy pres* distribution in equal parts to Community Legal Services of Philadelphia and Mid-Penn Legal Services in Central Pennsylvania for use in consumer credit education and counseling and similar uses. (*See* Ex. 1, Settlement Agreement, at ¶ 3.05). These institutions are worthy beneficiaries.

## VI. __CONCLUSION__

For the reasons detailed herein, Plaintiff Brian Cosgrove respectfully requests that this Court grant his motion for final approval of this Class action settlement.


Date:   08/04/11                                   /s/ Cary L. Flitter
                                                   CARY L. FLITTER
                                                   THEODORE E. LORENZ
                                                   ANDREW M. MILZ

                                                   LUNDY, FLITTER, BELDECOS &
                                                   BERGER, P.C.
                                                   450 N. Narberth Avenue
                                                   Narberth, PA  19072
                                                   (610) 822-0782

                                                   **Attorneys for Plaintiff and the Class**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN K. COSGROVE, on behalf of himself and all others similarly situated,<br><br>         Plaintiff,<br><br>         vs.<br><br>CITIZENS AUTOMOBILE FINANCE, INC.,<br><br>         Defendant. | CLASS ACTION<br><br><br><br>CIVIL ACTION NO. 09-CV-1095(BMS) |

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2011, I electronically filed the foregoing Motion for Final Approval of Class Settlement, along with a Memorandum of Law, Certifications, and proposed Order, with the Clerk of Court using the CM/ECF system which sent notification of such filing to:

Robert J. Hannen, Esquire
Thorp, Reed & Armstrong, LLP
One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA  15219-1425

Christopher J. Day, Esquire
Thorp Reed & Armstrong, LLP
One Commerce Square
2005 Market Street, Suite 1000
Philadelphia, PA  19103-7041

Said document is available for viewing and downloading from the ECF system.

Date:    08/04/11                                    /s/ Cary L. Flitter
                                                    CARY L. FLITTER