IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN K. COSGROVE, on behalf of himself and all others similarly situated, | CLASS ACTION |
| Plaintiff, | |
| vs. | CIVIL ACTION NO. 09-CV-1095(BMS) |
| CITIZENS AUTOMOBILE FINANCE, INC., | |
| Defendant. | |

**PLAINTIFF'S MOTION FOR THE
AWARD OF ATTORNEYS' FEES AND COSTS**

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT**

Dated:  **August 4, 2011**

**LUNDY, FLITTER, BELDECOS &
BERGER, P.C.
CARY L. FLITTER
THEODORE E. LORENZ
ANDREW M. MILZ**
450 N. Narberth Avenue
Narberth, PA  19072
(610) 822-0782

**Attorneys for Plaintiff and the Class**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................. 1

II.   NATURE OF THE LITIGATION & SETTLEMENT ................................ 3

III.  LEGAL ARGUMENT ........................................................... 4

      A.   The Equitable Foundation for Awards of Attorneys' Fees in
           Representative Actions ............................................... 4

      B.   Plaintiff's Fee Request is Fair and Reasonable Under Third
           Circuit Jurisprudence ............................................... 5

           1.   Size and nature of the common fund created, and the
                number of persons benefited .................................... 6

           2.   The presence or absence of substantial objections to the
                request for fees ............................................... 8

           3.   The skill and efficiency of Class Counsel....................... 9

           4.   The complexity and duration of the litigation.................. 10

           5.   The risk of nonpayment ....................................... 12

           6.   The amount of time devoted to the litigation.................. 14

           7.   Awards in similar cases ...................................... 15

                a.   The fee requested here is similar to fees awarded
                     in comparable settlements............................. 15

                b.   The fee requested is consistent with a privately
                     negotiated contingent fee in the marketplace.......... 16

      C.   Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee........ 17

      D.   Reimbursement of Class Counsel's Expenses ...................... 20

IV.   CONCLUSION.................................................................. 22

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN K. COSGROVE, on behalf of himself and all others similarly situated, | CLASS ACTION |
| Plaintiff, | |
| vs. | CIVIL ACTION NO. 09-CV-1095(BMS) |
| CITIZENS AUTOMOBILE FINANCE, INC., | |
| Defendant. | |

## PLAINTIFF'S MOTION FOR THE
## AWARD OF ATTORNEYS' FEES AND COSTS

Plaintiff Brian Cosgrove moves the Court for an award of Class Counsel fees and costs. The Plaintiff has achieved a favorable Class settlement of his claim for violations of Pennsylvania's Uniform Commercial Code arising from Defendant's defective notices of disposition of repossessed vehicles.

Plaintiff seeks Class Counsel fees from the common fund in the amount of $1,250,000.00, plus expense reimbursement of costs of $14,073.00. The requested fees represent approximately 11.7% of the total monetary relief attained for the Class through this lawsuit, not including the equitable component of credit correction. An excellent result has been achieved for the Class. Class Counsel has prosecuted this matter efficiently and expeditiously on an entirely contingent fee basis for two and a half years. Class Counsel fees were disclosed in the Class Notice. (See Exhibit 2, Affidavit of Paul Mulholland of Strategic Claims Services, class administrator, at Exhibit "A" thereto, Class Notice). No Class Member has lodged objection to the requested fees. (Ex. 2, Mulholland Aff't at ¶8). Because the fees requested are reasonable and entirely in keeping with circuit precedent on the award of Class Counsel fees from a common fund created, the Motion should be granted.

1

Plaintiff incorporates herein the attached Memorandum, the Certifications of Class Counsel, and other Exhibits in support of this Motion, as well as the contents of Plaintiff's Motion for Final Approval that is being filed contemporaneously herewith.

Date:  August 4, 2011

/s/ Cary L. Flitter
CARY L. FLITTER
THEODORE E. LORENZ
ANDREW M. MILZ

LUNDY, FLITTER, BELDECOS & BERGER, P.C.
450 N. Narberth Avenue
Narberth, PA  19072
(610) 822-0782

**Attorneys for Plaintiff and the Class**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN K. COSGROVE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CITIZENS AUTOMOBILE FINANCE, INC.,<br><br>Defendant. | CLASS ACTION<br><br><br><br>CIVIL ACTION NO. 09-CV-1095(BMS) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR THE AWARD OF ATTORNEYS' FEES AND COSTS**

**I.    INTRODUCTION**

Representative Plaintiff Brian Cosgrove ("Cosgrove"), by counsel, hereby moves for an award of $1,250,000.00 in attorneys' fees and $14,073.00 in expense reimbursement to Class Counsel in this case.  Plaintiff sued and reached a favorable Class settlement on his claim of non-compliant post-repossession notices of disposition of collateral under Pennsylvania's Uniform Commercial Code, 13 Pa. C.S. § 9611-9614.  Final approval is being sought by separate Motion filed contemporaneously with this Motion.[1]

The settlement agreement with Defendant Citizens Automobile Finance, Inc. ("CAF") calls for cash of $2,900,000.00, the cancellation of approximately $7,750,000.00 in post-auction deficiency balances, the repair of Class Members' credit reports (whereby CAF will delete its reporting or report Class Members as having a $0 balance), the cease and desist of any collection attempts, and satisfaction of any outstanding judgments.  (Exhibit 1, Settlement Agreement).

---

[1]     For convenience, and because the two Motions are interrelated and to be considered at the August 18, 2011 hearing, Plaintiff has prepared a singular, consolidated appendix of exhibits, which shall be delivered to Chambers.

The cash award coupled with the debt cancellation yields a common fund exceeding $10.65 million in aggregate relief to the Class before adding the value of the credit correction.

By Order dated June 20, 2011, this Court granted preliminary approval to this Class action settlement (Doc. No. 88) and on June 27, 2011 notice went out by mail to the Class of 1,853 Pennsylvania consumers.  (Exhibit 2 hereto, Affidavit of Paul Mulholland, of Strategic Claims Services at ¶4).  The Settlement Agreement states that Plaintiff will seek an award of Class Counsel fees in an amount not to exceed $1,250,000.00 and costs not to exceed $15,000.00 to be paid from the cash portion of the common fund.  The Notice so advised Class Members. (Exhibit 2, Mulholland Aff't, at Ex. "A" thereto, Class Notice as mailed to the Class).  The time in which a class member may object concluded July 30, 2011.  As of the date of the filing of this Motion (August 4, 2011), there have been no objections to the Class Counsel fees or costs sought nor objections to this class action settlement generally.  Costs have come in under the $15,000.00 estimate at $14,073.00, for which Plaintiff also seeks approval from the fund.

This memorandum focuses on the legal and factual standards applicable to an award of attorneys' fees from a common fund, and the appropriateness of the fees and expenses requested by Plaintiff here.  This application is warranted by the substantial relief Class Counsel achieved for Plaintiff and the Class; the numerous risks undertaken by Class Counsel; Class Counsel's vigorous and skillful prosecution of this consumer protection action over two and a half years, the absence of any objection to the requested fees, and the relatively modest size of the fee requested as compared to the total relief obtained.

This action was undertaken and prosecuted on a wholly contingent basis, a factor the Court may consider in evaluating this fee motion.  *See Serrano v. Sterling Testing Sys.*, 711 F.

Supp. 2d 402, 423 (E.D. Pa. 2010).   Plaintiff also points out that the UCC, under which this

claim arose, does not provide for attorney fee-shifting, *i.e.*, no statutory counsel fees.

The fee request of $1,250,000.00 sought from the common fund is reasonable under

Third Circuit jurisprudence for evaluating class action fee awards.   The requested amount

represents less than 11.7% of the aggregate value of the $10.65 million before consideration of

the valuable credit repair.  (The fees requested comprise about 43% of the cash-only component

of the settlement).

Correspondingly, under the lodestar cross-check method of calculating attorneys' fees in

class litigation, the fees sought by Class Counsel in this Action represent about 2.14 times its

total lodestar (i.e., time billed at regular billing rates).  This falls at the middle of the range of the

lodestar cross-check multiplier analysis, and well within the range approved in this District for

class cases.  *See e.g. Perry v. Fleet Boston Fin. Corp.*, 227 F.R.D. 105, 122 (E.D. Pa. 2005)

(Schiller, J.) ("the Third Circuit has explicitly recognized that multipliers ranging from one to

four are frequently awarded in common fund cases employing the lodestar method.").

As demonstrated below, the award sought will fairly and reasonably compensate Class

Counsel for its successful efforts on behalf of the Class in a manner that reflects the services

rendered and strong, tangible result achieved.

For these reasons and those set forth below, Plaintiff's Motion for Approval of Class

Counsel Fees and Expenses should be granted.

## II.   NATURE OF THE LITIGATION & SETTLEMENT

Plaintiff incorporates herein the "Nature of the Litigation", "Procedural History" and

"Nature of the Settlement" sections of the Motion for Final Approval filed concurrently with this

Motion.

## III.    LEGAL ARGUMENT

### A.    The Equitable Foundation for Awards of Attorneys' Fees in Representative Actions

The United States Supreme Court has long held that one who successfully pursues a lawsuit that creates a common fund is entitled to reasonable compensation from the fund as a whole. *Trustees v. Greenough*, 105 U.S. 527 (1882).  *See also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Electric Auto Lite Co.*, 396 U.S. 375 (1970).  The Supreme Court explicitly recognized an attorney's right to receive a reasonable fee from a common fund in *Central Railroad & Banking of Georgia v. Pettus*, 113 U.S. 116, 124 (1885), on the grounds that it is within a court's equitable power to compensate a person who maintains a suit that results in the creation, preservation, or increase of a fund in which others have a common interest.  "The underlying justification for attorney reimbursement from a common fund, as explained by the Supreme Court in three early cases, is that unless the costs of litigation are spread to the beneficiaries of the fund, they will be unjustly enriched by the attorney's efforts."  *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993) (*citing Sprague*, 307 U.S. at 166-67; *Pettus*, 113 U.S. at 126-27; and *Greenough*, 105 U.S. at 532).  Our Circuit is in accord.  *In re General Motors Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995).

The award of attorneys' fees based upon the common fund recovery is, in part, based upon the fact that without counsel willing to institute representative actions, individuals whose losses are too small to justify litigation would have no recourse at all.  *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980) (The financial inducements offered by the class action procedure have played an important role "in vindicating the rights of individuals who might otherwise not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost.").

The importance of contingent fee-based litigation is particularly evident in the context of cases brought for consumer protection, such as this one.    The Courts have consistently recognized the value of private litigation as a necessary and desirable tool to assure the effective enforcement of the consumer protection, securities and antitrust laws. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 781 (3d Cir. 2009).  This Court has recognized as much, stating:

> "The type of litigation undertaken by class counsel here, which addresses important consumer concerns that would likely be ignored without such class action lawsuits, must be encouraged."

*Perry*, 229 F.R.D. at 123.

The requested fee is well within the parameters set by Third Circuit jurisprudence, in the "percentage of recovery" basis, and as adjudged against the lodestar/multiplier approach as a "cross-check."

**B.      Plaintiff's Fee Request is Fair and Reasonable Under Third Circuit Jurisprudence**

This Court is to apply the "percentage of the fund" method in determining the fairness and adequacy of attorney fee award here. *See, e.g., In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006) ("In common fund cases such as this one, the percentage-of-recovery method is generally favored because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure") (internal quotations and citation omitted); *see also In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 333 (3d Cir. 1998) (same); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) (same); *In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 734 (3d Cir. 2001) ("The percentage-of-recovery method has long been used in this Circuit in common-fund cases.").

Several non-exclusive factors guide a district court's fee-award discretion. *See First State Orthopaedics v. Concentra, Inc.*, 534 F. Supp. 2d 500, 523 (E.D. Pa. 2007); *see also In re Rite Aid,* 396 F.3d at 301. In *Gunter v. Ridgewood Energy Corp.*, the Third Circuit set forth the factors for the Court's consideration. 223 F.3d 190, 195 (3d Cir. 2000) (overturning a decision that reduced to 18% a requested fee of 25% of the recovered fund). Notably, the *Gunter* factors "need not be applied in a formulaic way, and their weight may vary on a case-by-case basis." *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, 2009 WL 2137224, *14 (E.D. Pa. July 16, 2009) (Schiller, J.) (quoting *Oh v. AT & T Corp.*, 225 F.R.D. 142, 146 (D.N.J. 2004)).

The *Gunter* factors include (1) size of the fund created and number of persons benefiting from the settlement; (2) presence/absence of substantial objections to the fee; (3) skill of plaintiffs' counsel; (4) complexity and duration of the litigation; (5) risk of nonpayment; (6) amount of time devoted to the litigation; and (7) awards in similar cases. *Gunter*, 223 F.3d at 195. As described below, analysis of the *Gunter* factors supports the requested fee.

1. **Size and nature of the common fund created, and the number of persons benefited**

As noted, the common fund here consists of the aggregate of cash recovery of $2.9 million, just over $7.75 million in debt forgiveness and valuable credit report correction. If fees and costs are approved as requested, each Class Member stands to receive a check for approximately $870.00. Also, each stands to have a deficiency balance claimed due by CAF completely forgiven, a benefit that averages to about $4,182.00 per Class Member. The calculation works this way:

| Relief Per Class Member | |
|---|---|
| Total cash relief | $2,900,000.00 |
| Total debt relief | $7,750,000.00 |
| Average Monetary Relief per Class Member | $5,747.00 |
| Fees Per Class Member | ($674.00) |
| Costs and Administration per Class Member | ($19.00) |
| **Total Settlement Relief Per Class Member** | |
| **$5,054.00** | |

Further, any credit reporting related to the claimed deficiency will be removed or marked paid and any judgment taken by CAF will be deemed satisfied. (Settlement Agreement at ¶ 2.09-2.10). It is questionable whether these latter benefits – the credit report correction and judgment satisfaction – would be available to the Class had this case gone to trial, as the UCC section invoked does not provide such remedy. 13 Pa. C.S. § 9625(c). In light of the foregoing, the average Class Members' net monetary benefit is worth over $5,000 each, after requested fees and expenses.

The attorney fee per class member sums to approximately $674 per class member ($1.25M / 1853); a fraction of the total gross relief of approximately $5,747.00 for each. As noted, the requested fees represent about 11.7% of the aggregate value when including debt cancellation, but before equitable relief. It is appropriate to consider all the relief (including valuable credit repair) in considering the reasonableness of Class Counsel fees. *See Ciccarone v. B.J. Marchese, Inc.*, 2004 WL 2966932, *9-10 (E.D. Pa. Dec. 22, 2004) (consumer class action; credit report correction provided and valued as part of class relief at one-half cash portion).

Through this Class action and the efforts of the Class Representative Cosgrove and Class Counsel, 1,853 Pennsylvania consumers who had their cars repossessed will obtain a real cash benefit plus substantial debt forgiveness despite the risks of establishing liability and damages. The strong numbers here weigh heavily in favor of granting the fee request. *See In re AT&T*, 455 F.3d at 179 (holding that the trial court properly concluded that the settlement was an "excellent" result in light of the risks).

## 2. The presence or absence of substantial objections to the request for fees

The second factor focuses on the reaction of the Class to the requested attorney fees. As this and other courts in this District have found in similar cases, the absence of any objection strongly supports approval. *See Perry*, 229 F.R.D. at 123-24 ("The absence of large numbers of objections mitigates against reducing fee awards."); *Diet Drugs*, 553 F. Supp. 2d at 473 (dearth of objections "signifies that the requested award has been viewed by interested parties to this action as fair"); *Serrano*, 711 F. Supp. 2d at 418 ("no Class Member has objected to the settlement or to the requested fee, which evidences both a satisfactory result and a reasonable fee."); *see also In re Rite Aid*, 396 F.3d at 305 (affirming district court's finding that the filing of just two objections weighed in favor of awarding fee).

The Notice of Proposed Class Action Settlement approved by this Court was mailed to the 1,853 Class Members and stated that Class Counsel would apply for an award of fees and expenses out of the settlement proceeds "not to exceed $1,250,000", plus up to $15,000 in expenses. (*See* Ex. 2, Mulholland Aff't at Ex. "A" thereto, Notice). The disclosure about the fee request was conspicuously stated both on the front cover of the Notice as well as in its own numbered subsection. (*See id.*). In response to the mailed Notice, there have been zero objections to the settlement generally or to the fee request particularly. (Ex. 2, Mulholland Aff't

at ¶8). This strongly favors approval. *Perry*, 229 F.R.D. at 124; *Serrano*, 711 F. Supp. 2d at 418.

### 3.        The skill and efficiency of Class Counsel

The "single clearest factor reflecting the quality of Class Counsels' services to the Class are the results obtained." *In re Safety Components Sec. Litig.*, 166 F. Supp. 2d 72, 96 (D.N.J. 2001). Related factors include "the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 465 (E.D. Pa. 2008) (internal citations and quotations omitted). The goal under *Gunter* is to ensure "that competent counsel continue to undertake risky, complex and novel litigation" for the benefit of large numbers of Class Members who might otherwise lack reasonable access to justice. *Gunter*, 223 F.3d at 198.

Here, Class Counsel have obtained a very substantial and definite monetary benefit for thousands of consumers as efficiently as possible considering CAF's stalwart defense tactics, which included challenging Plaintiff's theory of recovery on the merits via a motion for judgment on the pleadings, engaging in discovery motion practice, and vigorously contesting class certification. Class Counsel faced constant opposition from Defendant as they worked to steward this novel case under the UCC to a successful resolution.

In the absence of this litigation, most of the Class members would have lacked any reasonable access to legal representation to pursue their small-value statutory claims under the UCC and MVSFA, or the wherewithal to defend a state court deficiency action if brought by CAF. As set forth in the Certifications of Cary L. Flitter, Theodore E. Lorenz and Andrew M. Milz, Class Counsel have vast experience litigating consumer class actions and are recognized as

having expertise in the field. (*See e.g.* Flitter Cert., Ex. 6; Lorenz Cert., Ex. 7; and Milz Cert., Ex. 8).

Class Counsel's experience and skill are also evident in the very effective and efficient prosecution of the claims, including the substantial settlement, against well-matched, well-financed opponents. *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 261 (D. Del. 2002) (class counsel "showed their effectiveness through the favorable cash settlement they were able to obtain"); *see also In re Ikon Office Solutions, Inc, Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ( "the most significant factor in this case is the quality of representation"). Throughout this case, CAF has been represented by highly skilled and experienced attorneys from Thorp Reed & Armstrong, a prominent Pittsburgh-based law firm.[2]   The fact that Class Counsel negotiated such a favorable settlement with high caliber legal advocates on the other side militates in favor of approval of this Motion.

### 4.   The complexity and duration of the litigation

Complexity and duration of the litigation is another factor the Court considers in analyzing attorneys' fees. *See In re General Motors*, 55 F.3d at 821.  While consumer claims often do not implicate economic or financial theories as complex as those involved in securities or antitrust class actions, they do present complexities of their own. *See, e.g., In re General Motors*, 55 F.3d at 821 (describing complexity of damages and liability issues); *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 249 (D.N.J. 2005) (describing complexity of consumer class action).

During two and a half years of litigation with CAF, Class Counsel was required to brief and oppose a dispositive motion on the merits, to fend off a defense motion to amend to assert

---

[2]      Class Counsel has been advised that in recent weeks, lead defense counsel Robert Hannen has moved his practice to the Eckert Seamans firm.

classwide counterclaims, a motion to shift the cost of discovery, and a motion to quash third party depositions. Plaintiff also filed numerous motions, such as a motion for class certification, motion for leave to file second amended complaint (to broaden the class) and motions to compel discovery. Much of this briefing included novel questions in this Circuit, for instance: whether a consumer who voluntarily has his car repossessed is entitled to UCC notice of disposition; whether the Gramm-Leach Bliley Act prevents disclosure of private consumer data in response to a federal subpoena; and whether a defendant can assert a collection counterclaim on a class-wide basis against a class of consumers. CAF's motion practice and opposition to discovery, merits and certification all added complexity, directed Class Counsel's tactics in this case, and informed its settlement strategy. It also bears note that at the time of filing this case in March of 2009, there were, to counsel's knowledge, no previously filed or reported repossession class cases in the district. There were only two in the Pennsylvania state courts, to counsel's knowledge: *McCall v. Drive Fin. Servs., LP*, 2006 WL 6233425 (Pa. C.C.P. Phila. Co. Apr. 10, 2009), instant class counsel's case, and *Cooley v. FNB Corp.*, 2008 WL 5724573 (Pa. CCP Lawrence Co. Nov. 13, 2008), that was prosecuted by other counsel. Although Class Counsel believe they are on solid legal footing, the paucity of authority and relative novelty of the theory add to the "complexity" and the risk. (*See* Sec. 5, *infra*, Risk). By any measure, this litigation was not facile.

Counsel weighed the amount of cash each Class Member might receive, the value of debt cancellation, and consulted an expert to examine the value of credit report correction to the Class Members. The resultant Settlement Agreement attained relief which, in the aggregate, exceeds the quantum of relief available at trial in this matter. The effort to forge a settlement that combined substantial cash <u>and</u> debt forgiveness <u>and</u> credit report correction was not simple and

in some ways added a complexity that a "litigation only" approach would not have.  The debt forgiveness also raised income tax issues.  Counsel reviewed arcane tax regulations and IRS private letter rulings and consulted with CPAs to conclude that no "identifiable event" would occur to trigger a 1099 (with attendant phantom income to the Class Members).  There was much negotiation with defense counsel over this issue, some of which ended up on this Court's doorstep, the Court will recall.

It is also noteworthy that final approval by no means ends the complexities (or work) to be faced by Class Counsel.  If recent experience is any indication of the post-approval work that is to follow in this case, Class Counsel can expect to deal with a stream of future phone calls and letters from Class Members and their family or lawyers related to: non-receipt or incorrectly addressed checks, credit reporting that had not yet been corrected, judgments that had not yet been satisfied, perhaps ongoing (if rogue) collection efforts, and the like.  (*See* Ex. 6, Flitter Cert. at ¶ 25, attesting to continued post-approval work in recent case(s)).  Assuring the settlement terms are carried out will require additional work, attention and monitoring by Class Counsel to ensure that all Class Members' credit reports are corrected as required.  Class Counsel will not make any additional application for fees after Final Approval.[3]  This factor supports the fee petition.

### 5.      The risk of nonpayment

Class Counsel undertook this action on an entirely contingent fee basis, assuming a substantial risk that counsel would have to devote a significant amount of time and incur expenses in prosecuting this action without any assurance of being compensated for their efforts.  Courts here and across the country have consistently recognized that the risk of receiving little or

---

[3]      Because of the inherently speculative nature of the future need for services, no time has been added to counsel's lodestar (*see* Sec. C, *infra*).  Based on experience, 60 hours or more of the firm's time, by all professionals, can readily be expected.  This would add $15,000 to $20,000 in time based upon blended rates.

no recovery is a factor in considering an award of attorneys' fees. *See, e.g., Chakejian v. Equifax Information Services, LLC*, --- F.R.D. ----, 2011 WL 2411109, *16 (E.D. Pa. June 15, 2011) (risk at trial and contingency basis "indicates that substantial attorney's fees should be awarded"); *Serrano*, 711 F. Supp. 2d at 423; *In re Warner Communications Sec. Litig.*, 618 F. Supp. at 747 (S.D.N.Y. 1985) (citing cases). As one court stated:

> Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*, 1994 WL 202394, at *6 (E.D. La. May 18, 1994).

The risk of no recovery in an unusual case of this type is real. There are many class actions in which counsel have expended thousands of hours, incurred substantial expenses, and yet received no remuneration despite their diligence and expertise. Class Counsel are aware of many hard-fought lawsuits in which, because of the discovery of facts unknown when the case was commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, or an insolvency, excellent efforts of class counsel produced no fee. Indeed, obtaining a favorable jury verdict is not a guarantee of success. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant). Notwithstanding this very real specter of nonpayment, Class Counsel have committed many hundreds of thousands of dollars worth of time and expense to the vigorous and successful prosecution of this action.

While Plaintiff remains confident in the strength of his case, and of his ability to prove damages, this action, indeed all litigation, involves substantial risks and the ultimate outcome cannot be predicted with certainty, especially in a case that in some ways was novel. Accordingly, the risks of non-payment in this case weigh in favor of approving the fees sought in this Motion.

### 6.    The amount of time devoted to the litigation

Through the filing of this Motion, August 4, 2011, Class Counsel (all professionals billing time) has spent about 1,640 hours (to date) prosecuting this case on behalf of the Class, for an aggregate lodestar of over $584,000, and have incurred $14,073.00 in expenses. (Flitter Certification at Exhibit 6 at ¶¶ 23, 26).

Among other important tasks associated with this litigation, Class Counsel incurred significant time on: client intake, legal research, background research on defendant, and drafts before filing the Class Complaint; legal research and drafting of the opposition papers to CAF's dispositive motion for judgment on the pleadings; drafting of written discovery requests, reviewing responses to discovery, conferring with counsel re inadequate responses, letters to counsel and the court about the same, and drafting discovery motions (as well as opposing defendant's discovery motions); preparing for, traveling to and taking multiple depositions of CAF representatives, some in Rhode Island; participating in conferences and hearings before the Court; compiling class data and drafting the motion for class certification and supporting memoranda; engaging in settlement discussions and drafting and re-drafting the settlement agreement; and finally moving for preliminary approval; overseeing appointment of a certified Class Administrator and mailing of notice; setting up the bank accounts; moving for final approval, and for the award of attorney fees and costs. (*See* Flitter Cert. at ¶ 24).  Significant

time (approximately 450 hours) was devoted to document and data analyses in preparation for class certification and proof of class-wide damages.  (*Id.* at ¶ 24).   Ultimately, the document review was integral in preparing for class certification and defining the framework for a suitable and defensible class-wide settlement.

In light of the analyses, the document discovery completed, the depositions taken, the motion practice and legal briefing on the merits, the class certification practice, and the extensive work devoted to negotiating and structuring the settlement, and future work (which counsel anticipates will include calls from class members and assorted legwork associated with overseeing administration of the settlement), this factor supports Class Counsels' fee request.

### 7.   Awards in similar cases

In comparing the award requested in this action with amounts awarded in similar actions, a court should:   (a) compare the actual award requested to other awards in comparable settlements; and (b) ensure that the award is consistent with what an attorney would have received if the fee were negotiated on the open market.  *In re Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314, * 30 (D.N.J., Sept. 13, 2005).

### a.   The fee requested here is similar to fees awarded in comparable settlements

A comparison of the fee sought in the Fee Petition with fees awarded in recent class actions militates strongly in favor of granting the Fee Petition.   Courts routinely award fees in common fund cases in the range of one-third of the total recovery.  *See, e.g. In re Rite Aid*, 396 F.3d at 306-07 (review of 289 settlements demonstrates "average attorney's fees percentage [of] 31.71%" with a median value that "turns out to be one- third"); *Moore v. Comcast Corp.,* 2011 WL 238821, *5 (E.D. Pa. Jan. 24, 2011) ("33% of the monetary value of the settlement … is comparable to the average fee customary in this circuit."); *In re Linerboard Antitrust Litig.*, 2004

WL 1221350, at *14 ("The above figures are in accord with a recent Federal Judicial Center study that found that in federal class actions generally median attorney fee awards were in the range of 27 to 30 percent.").

The percentage fee requested in this case is approximately 11.7% of the $10.65 million total value of the <u>monetary</u> relief obtained by the settlement ($2.9 million cash + $7.75 million in cancelled deficiencies).  As discussed above, the actual value of this settlement is higher when considering the equitable-type relief of credit repair (and the satisfaction of any outstanding judgments) as described in the expert report of David Stivers, Exhibit 5 hereto.  *See Ciccarone v. B.J. Marchese, Inc.*, 2004 WL 2966932, *9-10 (E.D. Pa. Dec. 22, 2004) (acknowledging value of credit correction and adding value to settlement for calculation of approved fee).  Even evaluating the requested fee as a percentage of the $2.9 million cash fund <u>alone</u> – which does not nearly adequately evaluate the extent of the settlement value – reveals a percentage of approximately 43%.  This is at the high end, but still within the range of reasonable fees requested and awarded by courts in this Circuit.  *See Cendant*, 243 F. 3d at 736 (fee awards range from 19% to 45%).  Class Counsel's fee request at below 11.7% is reasonable and within the range routinely awarded within this Circuit and this District.

> **b.      The fee requested is consistent with a privately negotiated contingent fee in the marketplace**

The award sought will fairly and reasonably compensate Class Counsel for its successful efforts on behalf of the Class in a manner that reflects how counsel would be compensated for similar services in non-representational litigation.  *See Diet Drugs*, 553 F. Supp. 2d at 482 ("the goal of the fee setting process is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by Court Order") (quotes and citations omitted); *see also In re Ikon*, 194 F.R.D. at 194 (stating that "in private contingency fee cases, particularly

in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery").

Here, Class Counsel successfully recovered a very significant amount for each Class Member, most of whom would not have had the means, wherewithal, knowledge or initiative to pursue their individual rights with respect to a modest individual claim.  And, pursuit of this claim on an individual basis would not be feasible because of the modest size, the legal nuances and the absence of statutory fee-shifting, among other factors.  The per-class member fee as requested comes to $674.  Given these market realities, Class Counsels' requested fee (of approximately 11.7% of the monetary-only recovery) is consistent with and indeed below the range of privately negotiated contingent fees.

These, and all the aforementioned factors support the requested fee award, which should be granted under the percentage of recovery approach.

### C.    Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

Even though the Third Circuit has a clearly established preference for calculating attorneys' fees using the percentage of the fund approach, the court of appeals has suggested district courts employ a lodestar cross-check.  *Rite Aid,* 396 F.3d at 305-06.  A comparison using the Lundy Flitter firm's lodestar demonstrates that the fees requested here are fair and reasonable.  Lodestar "multipliers ranging from one to four are frequently awarded in common fund cases employing the lodestar method." *Perry,* 227 F.R.D. at 122.

The Third Circuit has instructed that "the lodestar cross-check calculation need entail neither mathematical precision nor bean-counting.  The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid*, 396 F.3d at 306-07.  According to the Court of Appeals in *Rite Aid*, "the lodestar cross-check is 'not a full-

blown lodestar inquiry' and a court 'should be satisfied with a summary of the hours expended by all counsel at various stages with less detailed breakdown than would be required in a lodestar jurisdiction.'" *Id.* (quoting *Report of the Third Circuit Task Force, Selection of Class Counsel*, 208 F.R.D. 340, 423 (2002)).

Following the requirements of the Third Circuit articulated in *Rite Aid,* Plaintiff set forth a summary of the tasks involved in this litigation in Subsection B.6. above.[4] (*See also* Flitter Cert., Ex. 6 at ¶ 24). A summary of the hourly rates employing the fee structures of all the attorneys and staff working on the case is listed below, as set forth in the Flitter Certification, yields a lodestar of is just over $584,000.00:

<strong><u>Lundy, Flitter, Beldecos & Berger, P.C.</u></strong>

| <u>Lawyer</u> | <u>Hours</u> | <u>Hourly Rate</u> | <u>Amount</u> |
|---|---|---|---|
| Cary L. Flitter | 408.4 hours | $555.00 | $226,662.00 |
| Theodore E. Lorenz | 413.2 hours | $410.00 | $169,412.00 |
| Andrew M. Milz | 352.3 hours | $245.00 | $ 86,313.00 |
| Jessica Leisawitz | 319.0 hours | $245.00 | $ 78,155.00 |
| Joan M. Raughley | 33.75 hours | $160.00 | $ 5,400.00 |
| Nancy G. Flitter | 114.2 hours | $160.00 | $ 18,272.00 |
| **TOTAL LODESTAR TO DATE** | | | $584,214.00 |

(Flitter Cert., Ex. 6 at ¶ 23).

At $1,250,000.00 in fees requested, this results in a multiplier of about 2.14 before accounting for future services in administration, check and payment issues, class member and administrator issues involving address and check payees, credit report correction, lingering credit

---

[4]     Although the Court of Appeals jurisprudence speaks in terms of summaries, counsel's detailed timesheets can certainly be made available to the Court upon request.

reporting issues that impede future credit granting to class members, lingering or even rogue collection efforts by collectors unaware of the settlement and the like. This added time, while admittedly hard to quantify in advance, will increase the lodestar and depress the resultant "multiplier" to about the range of 2.0. Such a result is commonly approved as reasonable under Third Circuit standards. Indeed, the requested multiplier is lower than the multiplier of 3.0 articulated by the Third Circuit in *In re Cendant*, 243 F.3d at 734. An examination of approved multipliers reveals that the multiplier requested here is well within the appropriate range for approval. *See, e.g., Perry*, 229 F.R.D. at 122-23 (approving 1.5 multiplier and recognizing 3d Circuit standard range of one to four); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F.Supp.2d 322 (E.D. Pa. 2007) (Padova, J.) (approving 2.5 multiplier in lodestar cross-check); *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, *4 (cross-check; approving a 2.66 multiplier). "The lodestar multiplier aims to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *Perry*, 229 F.R.D. at 122.

To inform the Court's application of the lodestar cross check, Class Counsel have included evidence of the proper billing rate to calculate their lodestars in this matter. In particular, Class Counsel have filed herewith their own certifications (Exhibits 6 through 8). Class Counsel further request that the Court take judicial notice, pursuant to Fed. R. Evid. 201, of the 2010 Survey of Hourly Billing Rates conducted by THE NATIONAL LAW JOURNAL ("NLJ"), which observes that senior partner rates of large Philadelphia law firms (which typically defend class actions), are in the $600-700 per hour range, which is above the range sought by Class Counsel this case. (*See* Exhibit 9 hereto, NLJ Survey). The NLJ survey was most recently cited approvingly in a fee award in this District in *Harlan v. NRA Group, LLC*, 2011 WL 813961 (E.D. Pa. March 02, 2011) (consumer protection action under FDCPA). The

2011 rates of Class Counsel here were approved on contest by Judge Rufe in *Harlan*; *see also Rosenau v. Unifund*, 646 F.Supp.2d 743, 756-57 (E.D. Pa. 2009).  Plaintiff recognizes that since this is not a statutory fee-shifting case, the inquiry into rates and lodestar is more limited.  Nonetheless, this application readily passes muster under the recommended lodestar cross-check analysis of *In re Rite Aid*, 396 F.3d at 306-07.

The requested fees (i) have not met with any objection from a Class Member, (ii) satisfy all the *Gunter* factors, (iii) comport with market measures for typical contingent fee representation, (iv) reflect a lodestar multiplier that is well within the range of multipliers typically approved by courts in this District and in the Third Circuit, and (v) reflect the high level of success achieved.   Accordingly, Class Counsel respectfully submit that this Fee Petition should be approved.

### D.    Reimbursement of Class Counsel's Expenses

It is axiomatic that "[c]ounsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *In re Cendant Corp.*, 232 F. Supp. 2d 327, 343 (D.N.J. 2002); *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995).

Class Counsel, in the prosecution of this case, expended $14,073.00 in costs, as summarized in the Flitter Certification. (*See* Flitter Cert., Ex. 6 at ¶ 26).  Plaintiff employed the services of two experts in this matter: David Stivers, an expert on automobile financing and consumer credit (Mr. Stivers's CV is appended to his expert report, Exhibit 5 hereto), and David Glusman, CPA, who rendered an expert opinion regarding the calculation of statutory damages applicable in this case in support of Plaintiff's Motion for Class Certification (*see* Doc. No. 77, and Exhibit "F" thereto, Glusman Report complete with Mr. Glusman's CV).  Other expenses

included costs for document copying (at 20 cents/pg.), electronic legal research, court fees, travel expenses, meals, mail, and telephone expenses, as set forth in the chart below:

### COSGROVE CHART OF EXPENSES

| EXPLANATION | CHARGE |
|---|---|
| Complaint filing fee | $   350.00 |
| Service of Complaint | $     50.00 |
| Deposition transcripts | $3,077.00 |
| Service of subpoenas and witness fees | $   347.00 |
| Air Travel Expenses | $   321.00 |
| Hotel & Travel Expenses for Out of Town Deposition | $   436.00 |
| Expert Witness, D. Stivers; D. Glusman, C.P.A. | $5,045.00 |
| Westlaw | $1,753.00 |
| Federal Express | $   118.00 |
| Bulk Photocopying | $2,190.00 |
| Binding Charges | $     44.00 |
| Teleconference Charges | $     73.00 |
| Parking | $   269.00 |
| **TOTAL** | **$14,073.00** |

(Ex. 6, Flitter Cert. at ¶ 26).

Reimbursement of similar expenses is routinely permitted. *See, e.g., Moore*, 2011 WL 238821 at *5; *Serrano*, 711 F. Supp. 2d at 423-24; *see also In re Datatec*, 2007 WL 4225828, *9 (D.N.J. Nov. 28, 2007) (approving expenses for "costs expended for the purposes of litigating this action, including costs associated with experts, consultants, investigators, legal research, mediation, meals, hotels, transportation, word processing, court fees, mailing, postage, telephone, and the costs of giving notice").[5]

These expenses were critical to Class Counsel's success in achieving the settlement and were reasonable and actually modest. Class Counsel's application for reimbursement of these expenses should, therefore, be granted.

---

[5]     The cost of the Class Administrator was allowed from the fund and is not addressed here.

IV.     **CONCLUSION**

For the reasons detailed herein, Plaintiff Brian Cosgrove respectfully requests that this

Court grant his Motion for the Award of Attorneys' Fees and Expenses.


Date:   08/04/11                                    /s/ Cary L. Flitter
                                                   CARY L. FLITTER
                                                   THEODORE E. LORENZ
                                                   ANDREW M. MILZ

                                                   LUNDY, FLITTER, BELDECOS &
                                                   BERGER, P.C.
                                                   450 N. Narberth Avenue
                                                   Narberth, PA  19072
                                                   (610) 822-0782

                                                   **Attorneys for Plaintiff and the Class**

22

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN K. COSGROVE, on behalf of himself and all others similarly situated, | CLASS ACTION |
| Plaintiff, | |
| vs. | CIVIL ACTION NO. 09-CV-1095(BMS) |
| CITIZENS AUTOMOBILE FINANCE, INC., | |
| Defendant. | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2011, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system which sent notification of such filing to:

Robert J. Hannen, Esquire
Thorp, Reed & Armstrong, LLP
One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA  15219-1425

Christopher J. Day, Esquire
Thorp Reed & Armstrong, LLP
One Commerce Square
2005 Market Street, Suite 1000
Philadelphia, PA  19103-7041

Said document is available for viewing and downloading from the ECF system.

Date:  08/04/11                    */s/ Cary L. Flitter*
                                   CARY L. FLITTER