**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRIAN K. COSGROVE, on behalf of** | : | |
| **himself and all others similarly situated,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITIZENS AUTOMOBILE FINANCE,** | : | |
| **INC.,** | : | **No.  09-1095** |
| **Defendant.** | : | |

<u>**MEMORANDUM**</u>

**Schiller, J**.                                                                               **August 25, 2011**

Plaintiff moves for final approval of a class action settlement involving allegedly defective repossession notices Defendant Citizens Automobile Finance, Inc. ("CAF") sent to Pennsylvania automobile purchasers.  Class counsel has also moved for attorneys' fees, reimbursement of costs and expenses, and for an incentive award for Brian Cosgrove.  After a fairness hearing conducted on August 18, 2011 pursuant to Federal Rule of Civil Procedure 23(e), the Court will grant these motions.

**I.       BACKGROUND**

**A.       Class Claims**

Plaintiff filed this action on behalf of himself and similarly situated consumers, alleging that CAF violated Pennsylvania law when it sent class members defective automobile repossession notices after they fell behind on payments and had their cars repossessed.  The class members all entered into automobile finance contracts which stated, "[i]f the vehicle has been repossessed, you may reinstate this Contract and the vehicle will be returned to you provided you pay all past due

payments or agree with us on mutually satisfactory arrangements, plus accrued late charges . . ."
(Am. Compl. Exs. A, B [Cosgrove Finance Contracts].)  Despite this language, CAF sent class
members notices that either demanded the entire amount due on the contract (not just past due
payments) or were sent no notice at all.

Under Pennsylvania law, "[e]very aspect of a disposition of collateral, including the method,
manner, time, place and other terms, must be commercially reasonable."  13 Pa. Cons. Stat. §
9610(b).  Furthermore, "a secured party that disposes of collateral under § 9610 (relating to
disposition after default) shall send . . . a reasonable authenticated notification of disposition."  13
Pa. Cons. Stat. § 9611(b).  The Pennsylvania Uniform Commercial Code ("UCC") does not define
"reasonable" notice, but Pennsylvania courts define the term by looking to statutes governing vehicle
finance and repossession.  *See Indus. Valley Bank and Trust Co. v. Nash*, 502 A.2d 1254, 1263 (Pa.
Super. Ct. 1985).  The relevant section of Pennsylvania's Motor Vehicle Sales Finance Act
("MVSFA") states:

> [w]hen repossession of a motor vehicle, which is the subject of an installment sale
> contract, is effected otherwise than by legal process, the holder shall immediately
> furnish the buyer with a written 'notice of repossession' . . . . [that] shall set forth
> the buyer's right as to reinstatement of the contract, if the holder extends the
> privilege of reinstatement and redemption of the motor vehicle [and] shall contain
> an itemized statement of the total amount required to redeem the motor vehicle.

69 Pa. Cons. Stat. § 623D; *see Nash*, 502 A.2d at 1263 (nothing that Article 9 and the MVSFA
should be construed together).  The class alleges that the repossession notices — or lack thereof —
ran afoul of the UCC because they did not properly set forth consumers' reinstatement rights, and
in many cases overstated consumers' obligations.

Pennsylvania law provides for recovery of statutory damages for failure to comply with

Article 9.  13 Pa. Cons. Stat. § 9625(c)(2) states:

> If the collateral is consumer goods, a person that was a debtor or a secondary obligor at the time a secured party failed to comply with this chapter may recover for that failure in any event an amount not less than the credit service charge plus 10% of the principal amount of the obligation or the time price differential plus 10% of the cash price.

Accordingly, the class submits that damages are easily calculated by applying a uniform formula.

**B.    Class Composition**

Upon considering Plaintiff's unopposed class certification motion, the Court preliminarily certified the following settlement class on June 20, 2011, which includes approximately 1,800 Pennsylvanians:

(a)    All persons who entered into a Pennsylvania Retail Installment Sales Contract ("RISC") for the purchase and financing of a motor vehicle;

(b)    Who purchased the vehicle primarily for consumer use;

(c)    Where the RISC was assigned to or the auto was otherwise financed by Citizens Automobile Finance, Inc., or any similar name under which Defendant did business (collectively, "Citizens");

(d)    In which the RISC stated in part, "if the vehicle has been repossessed, you may reinstate this Contract and the vehicle will be returned to you provided you pay all past due installments . . .";

(e)    Who had their vehicle(s) repossessed by or at the behest of Citizens; and

(f)    Between March 25, 2005, and the date of the signing of this Order:

    (i)    were sent a notice of repossession or comparable post-repossession notice of plan to sell property from CAF ("Class Notice") which stated substantially as follows:

        (1)    "You may redeem the vehicle by paying the entire amount you owe on the Contract (not just past due payments) plus, to the extent permitted by law, the cost of taking and storing the vehicle, and other expenses that we incurred"; or

        (2)    "State law may permit you to get it back (redeem) [or "reinstate"] by curing any payment or other default(s) within the time allowed in the cure notice.  If state law does

> not permit you to cure your default(s) in this manner, you may redeem the vehicle by paying the entire amount you owe on the contract (not just past due payments) . . .”; or

    (ii)    were sent no Class Notice at all.

**C.**    **Class Settlement**

The significant terms of the class settlement are as follows:

1.    CAF has paid $2.9 million into a settlement fund, which will be used to pay class members, class counsel fees and costs, and administration expenses.

2.    Class members will receive a pro rata share of the settlement fund after the deduction of court-approved attorneys’ fees, costs, and administration.

3.    CAF will release all class members with a post-repossession deficiency balance claimed by CAF.  The aggregate deficiency balances approximate $7.75 million.

4.    CAF will satisfy any outstanding monetary judgments it presently holds against class members related to claimed deficiency balances due.  CAF will use its best efforts ensure that any judgments previously entered against class members have been satisfied or released.

5.    CAF will cease all collection activity on any deficiency balance allegedly owed by class members.

6.    Subject to court approval, CAF will pay Cosgrove an incentive award of $7,500.

7.    130 days after the distribution of settlement funds to the class, the residue of the principal, if any, of any uncashed checks distributed shall be donated as

a cy pres distribution in equal parts to Community Legal Services of

Philadelphia and Mid-Penn Legal Services.

On June 27, 2011, in accordance with the Court's preliminary approval order, notice

of the proposed settlement was mailed to 1,853 class members whose named appeared in

CAF's records. (Pl.'s Mot. for Approval of Class Settlement Ex. 2 [Mulholland Aff.].) The

notice informed the class members of the terms of the settlement and informed class

members of their right to opt out of the settlement or object by July 30, 2011. To date, one

class member has requested exclusion and no member has objected. (*Id.*) On August 18,

2011, the Court held a fairness hearing pursuant to Federal Rule of Civil Procedure 23(e).


## II.     STANDARD OF REVIEW

### A.     Settlement Approval

In evaluating a motion for final approval of a class action settlement, the court must

determine that certification is appropriate under Federal Rules of Civil Procedure 23(a) and

(b), and that the settlement is fair to the class under Rule 23(e). *In re Ins. Brokerage Antitr.*

*Litig.,* 579 F.3d 241, 257 (3d Cir. 2009). As the Supreme Court has explained:

> Confronted with a request for settlement-only class certification, a district court need
> not inquire whether the case, if tried, would present intractable management
> problems, for the proposal is that there be no trial. But other specifications of [Rule
> 23]-those designed to protect absentees by blocking unwarranted or overbroad class
> definitions-demand undiluted, even heightened, attention in the settlement context.

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). However, the court must apply

the class certification requirements of Rule 23(a) and (b) independently of its fairness

determination under Rule 23(e). *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent*

*Actions*, 148 F.3d 283, 308 (3d Cir. 1998).

To obtain certification under Rule 23, Plaintiff must satisfy all four requirements of subpart (a) and one of the requirements of subpart (b).  The requirements of subpart (a) are: (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical ... of the class"); and (4) adequacy of representation (representatives  "will fairly and adequately protect the interests of the class").  *Amchem Prods.*, 521 U.S. at 613.

Plaintiffs seeks certification pursuant to Rule 23(b)(3).   Under Rule 23(b)(3), the court may certify a class upon a finding "that the questions of law or fact common to members of the class predominate over any questions affecting only individual members ("predominance"), and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy ("superiority").

Rule 23(e) provides that "[t]he claims, issues or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  The rule is meant "to protect the unnamed members of the class from unjust or unfair settlements." *Ehrheart v. Verizon Wireless*,  609 F.3d 590, 592-93 (3d Cir. 2010).   The court "acts as a fiduciary, guarding the claims and rights of the absent class members."  *Id.* at 593.

### B .   Attorneys' Fees

 Federal Rule of Civil Procedure 23(h) provides, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  In this case, the settlement agreement contemplates an award

6

of up to $1.25 million.

III.     **DISCUSSION**

    A.     **Class Certification**

      As set forth below, the Court holds that the class meets the requirements of Rule 23 and will certify the settlement class.

      *1.     Rule 23(a)*

      The first requirement for a class action is that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1)  While no magic number demonstrates that the numerosity requirement is satisfied, a class of more than forty is generally considered sufficient. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Here, numerosity is satisfied because the class has over 1,800 members.

      The commonality requirement of Rule 23(a)(2) is met "if the named plaintiff shares at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994).  Here, Plaintiff has advanced multiple common factual and legal questions, including whether CAF's notice was unreasonable under the UCC, whether class members were sent a notice that accurately represented the reinstatement terms of their contracts, and how damages are to be awarded.  Accordingly, the commonality requirement is satisfied.

      The typicality inquiry of Rule 23(a)(3) assesses whether the named plaintiffs have incentives that align with those of absent class members so that the absentees' interests will be fairly represented.  *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 631 (3d Cir. 1996). This requirement "is intended to preclude certification of those cases where the legal theories

7

of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees." *Baby Neal*, 43 F.3d at 57.   In this case, Cosgrove's claims and the class members' claims are predicated on the same or similar contract language regarding reinstatement rights.   Accordingly, Cosgrove has suffered harm "as a result of this same classwide conduct that injured the absentee class members," and typicality is satisfied. *See In re Prudential*, 148 F.3d 283 at 312.

Lastly, the adequacy of representation requirement of Rule 23(a)(4) "considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class." *In re Community Bank of N. Va.*, 418 F.3d 277, 303 (3d Cir. 2005).  Here, the class is represented by counsel experienced in litigating class actions, and there is nothing to suggest that Cosgrove has any interests antagonistic to the class.   Thus, the adequacy of representation requirement is also satisfied.

### 2.    *Rule 23(b)(3)*

Both requirements of Rule 23(b)(3) are satisfied.   The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.   To satisfy this requirement, a plaintiff must establish that "common proof will predominate with respect to each of [the elements of his claim]." *Behrend v. Comcast Corp.*, 264 F.R.D. 150, 156 (E.D. Pa. 2010).   Here, the "common proof" is that all class members had a contractual reinstatement right and received deficient repossession notices or no notices at all, all of which can be established with available documentary evidence.   Moreover, the calculation of damages under 13 Pa. Cons.

Stat. § 9625(c) is uniform and may be calculated on a classwide basis.  (*See* Pl.'s Mot. for

Class Cert. Ex. F [Expert Report of David Glusman, CPA].)

A class action is superior to other available methods where a class resolution of the

common issues among class members "outweighs the difficulties in management of separate

and individual claims, and allows access to the courts for those who likely would not gain

such access standing alone — particularly in light of the relatively modest amount of

statutory damages." *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 413 (E.D.

Pa. 2010).  Here, statutory damages are relatively modest, and the burden of managing over

1,000 separate actions would be substantial.  Accordingly, the predominance requirement is

satisfied.

### B.   Fairness of the Settlement

Under Rule 23(e), a district court must make findings as to each of nine factors

articulated in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), in order to approve a settlement

as fair, reasonable, and adequate.  *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333 (3d Cir.

2010).  The *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; [and] (9)
> the range of reasonableness of the settlement fund to a possible recovery in light of
> all the attendant risks of litigation.

*Girsh,* 521 F.2d at 157.   If appropriate, a court must also make findings as to factors

articulated in *In re Prudential*, which are:

9

> [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Pet Food Prods.*, 629 F.3d at 350-51.

### 1.   *The complexity, expense and likely duration of the litigation*

This factor "captures the probable costs, in both time and money, of continued litigation." *In re Warfarin Sodium Antitr. Litig.*, 391 F.3d 516, 535-36 (3d Cir. 2004). This case was filed over two years ago and encompasses a class period stretching back to 2005. CAF continues to deny liability, and absent this settlement, this case could result in significant expenditures for both sides, and recovery for the class may lie only in the distant future, if at all. Accordingly, this factor favors approval of the settlement.

### 2.   *The reaction of the class to the settlement*

Given that only one class member has requested exclusion and that no member has objected, this factor weighs in favor of approval. *See Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (noting that this factor strongly favored settlement where "only twenty nine" of 281 class members objected).

### 3.   *The stage of the proceedings and the amount of discovery completed*

10

Consideration of the third factor ensures that the parties have an "adequate appreciation of the merits of the case" before settlement. *See In re Prudential*, 148 F.3d at 319. Here, the settlement comes two years after the case was filed, only after substantial discovery was completed, and the parties contested the issue of class certification and the case's underlying merits. CAF ultimately produced the files of over 3,000 consumers, and Plaintiff deposed seven CAF representatives. (Pl.'s Mot. Ex. 6 [Certification of Cary Flitter, Esq.] ¶ 24.) The Court determines that the parties reached settlement with a full appreciation of the strengths and weaknesses of their respective cases. This factor weights in favor of approval.

4.      *The risks of establishing liability and establishing damages*

The fourth and fifth *Girsh* factors "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Prudential*, 148 F.3d at 319. Plaintiff maintains that the case for liability is very strong, but CAF has asserted various defenses, including lack of jurisdiction under the Class Action Fairness Act. The Court agrees that Plaintiff's case for liability is compelling, and that damages calculations would be relatively straightforward. However, CAF has argued it is entitled to set off the deficiency balances certain class members owed after the sale of their vehicles. Approving this settlement now, which includes relief from deficiency balances, will enable those class members to obtain relief that would be otherwise uncertain. The Court concludes that these factors weigh in favor of approval.

5.      *The risks of maintaining the class action through the trial*

11

Here, the Court notes that CAF initially opposed certification, and if this case proceeded to trial, may seek to decertify at that stage. *Id.* at 321. (noting that "[u]nder Rule 23, a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable.") However, the Court concludes that the class would likely withstand such certification challenges. The Court finds that this factor is neutral.

### 6. *The ability of the defendants to withstand a greater judgment*

There is no indication that CAF will not be able to withstand a greater judgment. However, this factor does not necessarily weigh against approval. *See Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 24, 254-55 (E.D. Pa. 2011); *Bonett v. Educ. Debt Servs., Inc,* Civ. A. No. 01-6528, 2003 WL 21658267, at *7 (E.D. Pa. May 9, 2003). The Court finds that this factor is neutral.

### 7. *Reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation*

The last two *Girsh* factors assess "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing . . . compared with the amount of the proposed settlement." *In re Prudential*, 148 F.3d at 322. Here, the settlement provides for $2.9 million in cash to be distributed to the class, less attorneys' fees and other expenses, along with up to $7.75 million in debt forgiveness. Plaintiff submits that the best possible recovery to the class would be $11,442,275, the aggregate statutory damages of the 1,853 class members, and notes that the value of the settlement comes close to this amount. Other courts have included debt forgiveness as part of a settlement fund, *see, e.g.*, *Holman v. Student Loan Xpress, Inc,*. Civ. A. No. 08-305,

2009 WL 4015573, at *5 (M.D. Fla. 2009), but the Court does not consider this a non-monetary award, such as a coupon, that "deserve[s] careful scrutiny to ensure that it ha[s] actual value to the class."  *See* Fed. R. Civ. P. 23, Advisory Committee's Note; *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653–55 (7th Cir. 2006).  The Court finds that debt forgiveness provides a valuable award to class members.  Although it is not easily quantifiable, CAF's additional   obligation to correct negative entries on class members' credit reports in tangible and adds value to the settlement.  Accordingly, the last two factors weigh in favor of approval.

### 8.    *Additional Prudential factors*

The Court concludes that none of the other factors articulated in *Prudential* weigh against approval, and that one of the factors — whether the procedure for processing individual claims under the settlement is fair and reasonable — weighs in favor.  Class members are not required to submit claim forms, and will simply receive checks for their pro rata share of the $2.9 million in cash (around $870 each), less attorneys' fees and other expenses.  (*See* Pl.'s Mot for Approval 22).

### 9.    *Cy pres*

Finally, the settlement provides that the residue of unclaimed checks shall be distributed on a cy pres basis to Community Legal Services of Philadelphia and Mid-Penn Legal Services in equal shares.  Both organizations provide consumer credit education and similar services.  (Pl.'s Mot. for Approval 23.)  The Court finds these are worthy cy pres recipients, as they will help to redress the types of wrongs alleged in this litigation.  *See Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 117 (E.D. Pa. 2005) (discussing the

13

appropriateness of cy pres distribution in consumer credit class actions involving relatively small individual recoveries).

### C.     Attorneys' Fees

Class Counsel seeks $1.25 million in attorneys' fees, which represents approximately 11.7% of the settlement fund, including debt relief, but before considering the value of credit repair.  For the reasons stated below, the Court finds that counsel's requested fee award is reasonable.

There are two methods for calculating attorneys' fees in a class action:  the percentage-of-recovery method and the lodestar method.  *In re Prudential*, 138 F.3d at 333. In common fund cases such as this one, the percentage-of-recovery method is preferred, which is "is designed to allow courts to award fees from the fund  in a manner that rewards counsel for success and penalizes it for failure."  *Id.*  When assessing a motion for a fee award under the common fund paradigm, the Third Circuit has identified factors to consider to assess the reasonableness of an attorneys' fee award. These include:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, and (8) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained.

*In re Diet Drugs Prod. Liab. Litig.,* 582 F.3d 524, 541 (3d Cir. 2009) (citing *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 195 (3d Cir. 2000)).  The *Gunter* factors "are not to be applied in a rigid, formulaic manner, but rather a court must weigh them in light of the

facts and circumstances of each case." *Moore v. Comcast Corp.*, Civ. A. No. 08-773, 2011 WL 238821, at * 4 (E.D. Pa. Jan. 24, 2011).   The Third Circuit has also encouraged district courts to "cross-check" a percentage fee award using the lodestar method in order to ensure counsel are not overcompensated. *See In re Prudential*, 148 F. 3d at 333.

### 1.     The size of the fund and the number of beneficiaries

As noted above, the common fund consists of $2.9 million in cash and approximately $7.75 million in debt forgiveness.  If the Court approves fees as requested, each of over 1,800 class members will receive a check for approximately  $870.   Additionally, relief from deficiency balances averages around $4,180 per class member.  This favor weights in factor of the requested award.

### 2.     The presence or absence of substantial objections by class members

"The absence of large numbers of objections mitigates against reducing fee awards." *In re Cendant Corp*., 232 F. Supp. 2d 327, 337 (D.N.J. 2002).  As noted above, there have been no objections to the settlement.  This factor weighs in favor of the award.

### 3.     The skill and efficiency of the attorneys involved and the complexity and duration of the litigation

"The skill and efficiency of class counsel is measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the . . . experience and expertise of the counsel, the skill . . . with which counsel prosecuted the case and the performance . . . of opposing counsel." *Bredbenner v. Liberty Travel*, *Inc.*, Civ. A. No. 09-905, 2011 WL 1344745, at *15 (D.N.J. Apr. 8, 2011).  Here, class counsel obtained substantial benefits for a large number of Pennsylvania consumers after two years of active

litigation.  Additionally, class counsel is highly experienced, having successfully litigated numerous consumer class actions.  (*See* Pl.'s Mot. Ex. 7 [Certification of Theodore Lorenz, Esq.] ¶ 11.)  Class counsel submitted high-quality work to the Court throughout this litigation, and they pursued the case vigorously against able opposing counsel.  These factors weigh in favor of the award.

### 4.   The risk of nonpayment

In assessing this factor, courts consider the defendant's ability to withstand an adverse judgment and the risks of establishing liability at trial.  *Bredbenner*, 2011 WL 1344745, at *20.  Although there is nothing to suggest that CAF would not be able to withstand a judgment, establishing liability — at trial or ultimately on appeal — is never guaranteed.  Additionally, the Court notes that counsel undertook representation on a contingent fee basis and bore all the costs of litigation, investing substantial resources without any assurance of payment.  This factor weighs in favor of the award.  *See id.* (noting that a contingent fee arrangement adds to the risk of nonpayment).

### 5.   The amount of time devoted to the case by plaintiffs' counsel

Over the course of two years, counsel have spent approximately 1,640 hours on this case.  This amount of time is significant, but not excessive; counsel engaged in extensive research, discovery, motion practice, and settlement negotiations.  This factor weights in favor of the award.

### 6.   Awards in similar cases

In the Third Circuit, fee awards in common fund cases generally range from 19% to 45% of the fund.  *Id.* at *21.  Here, the settlement fund comprises $10.65 million before

considering the benefit of credit repair.  Counsel seek approximately 11.7% of the fund.  The amount sought is below the range often approved.  Additionally, counsel was recently awarded $925,000 in a very similar class action litigation involving automobile repossession notices.  *See* Order for Final Judgment and Dismissal, *Hartt v. Flagship Credit Corp*, Civ. A. No. 10-822, (E.D. Pa. Apr. 5, 2011), ECF No. 46.  The Court finds an award of $1.25 million reasonable in this case.

> 8.    *The percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement*

Contingency fees representing 25% to 30% of recovery are typical in contingency matters. *In re Ikon Office Solutions, Inc., Sec. Litig.,* 194 F.R.D. 166, 194 (E.D. Pa. 2000) (collecting cases).  Given that counsel is requesting an award of only 11.7% of the settlement fund, this factor weighs in favor of approval.

> 9.    *Lodestar cross-check*

"The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005).  Counsel worked over 1,600 hours at rates between $555 per hour and $160 per hour**,** yielding a lodestar of approximately $584,000.  (*See* Pl.'s Mot. Ex. 6 [Flitter Certification] ¶ 23.)

In assessing whether rates are reasonable, courts assess the experience and skill of the attorneys and look at the market rates in the relevant community.  *Chakejian v. Equifax Info. Servs., LLC*, Civ. A. Nos. 07–2211, 10–3574, 10–3575, 2011 WL 2411109, at *13 (E.D. Pa.

June 15, 2011).  Class counsel is highly experienced in consumer class actions and, as already noted, has consistently submitted excellent work to the Court.  The Court finds class counsel's rates reasonable.  *See Hartt,* ECF No. 46 (approving the same rates for class counsel).

When examining whether the number of hours expended is reasonable, the court must ensure that counsel neither spend excessive time on the case nor use highly-priced attorneys for matters properly delegated to less experienced attorneys or staff.  *Id.*  Given this case's duration and complexity, the Court finds that the hours expended were not excessive. Additionally, significant hours were delegated to less expensive attorneys. (*See* Flitter Certification ¶ 23.)

Here, the lodestar multiplier — the ratio of the requested award and counsel's lodestar — is 2.14, which is well within the range approved in similar cases.  *See In re Prudential*, 148 F.3d at 341 (noting that multipliers from one to four are frequently awarded in common fund cases in the Third Circuit); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 341 (E.D. Pa. 2007) (approving a 2.5 lodestar multiplier).

### D.     Incentive Award

Awards to class representatives lie within the discretion of the Court and may be awarded for the benefit conferred on the class.  Factors courts examine when assessing such awards include  the risks to the representative, his involvement in the litigation, and the degree to which he benefitted as a class member.  *Hall v. Best Buy Co.*, 274 F.R.D. 154, 173 (E.D. Pa. 2011).  Here, counsel maintains that Cosgrove was extensively involved at every step of this case, including reviewing and critiquing the settlement agreement.  The Court

18

also finds that Cosgove's pro rata share of the settlement is insufficient to compensate him for his efforts.  An incentive award of $7,500 is reasonable.

      **E.**     **Costs**

     "Counsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *In re Cendant Corp.*, 232 F. Supp. 2d 327, 343 (3d Cir. 2002).  Here, counsel have documented $14,073 in appropriate costs, to be reimbursed from the $2.9 million cash fund. (Flitter Certification ¶ 26.)  This request is in accordance with the settlement agreement and is reasonable.

**IV.**    **CONCLUSION**

     For the reasons stated above, the Court grants final certification of the class, and finds that the settlement and the proposed fee award are fair, reasonable, and adequate pursuant to Rule 23(e).  An appropriate Order will be docketed separately.